UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: KIND LLC "HEALTHY AND ALL NATURAL" LITIGATION

THIS DOCUMENT RELATES TO:

ALL ACTIONS

ECF Case

Case No. 1:15-md-02645-WHP

**DEFENDANTS KIND LLC AND KIND MANAGEMENT, INC.'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

720219869

Table of Contents

INTRODUCTION AND SUMMARY OF REPLY ................................................................... 1

I. THE PRIMARY JURISDICTION DOCTRINE APPLIES TO THIS ACTION ............. 3

    A. Plaintiffs' "Natural" Claims Implicate Highly Technical Policy Issues ............... 3

    B. There Is A Clear Danger Of Inconsistent Labeling Standards ............................ 4

    C. A "Prior Application" Is Pending, And Speculation About Exactly When And How FDA Might Act Is Irrelevant ................................................................ 5

    D. Primary Jurisdiction Decisions In "Natural" Cases That Pre-Date FDA's Request Are Supportive Of Primary Jurisdiction Here ......................................... 5

II. PLAINTIFFS CANNOT DEFINE "NATURAL" OR "ALL NATURAL" ...................... 6

III. THE "HEALTHY" CLAIMS SHOULD BE DISMISSED ............................................... 7

    A. Plaintiffs' "Healthy" Claims Are Preempted Under Buckman ............................ 7

    B. Plaintiffs Do No Allege Deception Independent Of FDA's Regulations ............ 8

IV. PLAINTIFFS LACK STANDING TO CHALLENGE "NON-GMO" LABELING ................................................................................................................... 9

    A. No Plaintiff Read Or Relied Upon "Non-GMO" ................................................. 9

    B. Plaintiffs Do Not Allege That Products They Purchased Contained GMOs ................................................................................................................. 10

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ackerman v. Coca-Cola Co.*,
  2010 WL 2925955 (E.D.N.Y. July 21, 2010) ................................................................. 7

*Am. Home Prods. Corp. v. Johnson & Johnson*,
  672 F. Supp. 135 (S.D.N.Y. 1987) ................................................................................ 5

*Anderson v. The Hain Celestial Grp., Inc.*,
  No. 14cv03895, Dkt. 62 (N.D. Cal. Apr. 8, 2016) ......................................................... 2

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) .................................................................................... 6, 7

*Ault v. J.M. Smucker Co.*,
  2014 WL 1998235 (S.D.N.Y. May 15, 2014) ............................................................... 6

*Backus v. Nestlé USA, Inc.*,
  --- F. Supp. 3d ---, 2016 WL 897673 (N.D. Cal. Mar. 8, 2016) .................................... 5

*In re Bayer Corp. Combination Aspirin Prods. Mkt. And Sales Prac. Litig.*,
  701 F. Supp. 2d 356 (E.D.N.Y. 2010) ....................................................................... 8, 9

*Chin v. Gen. Mills, Inc.*,
  2013 WL 2420455 (D. Minn. June 3, 2013) ................................................................. 7

*Church & Dwight Co. Inc. v. SPD Swiss Precision Diagnostics, GmbH*,
  2014 WL 2526965 (S.D.N.Y. June 3, 2014) ................................................................. 5

*Coyle v. Hornell Brewing Co.*,
  2010 WL 2539386 (D.N.J. June 15, 2010) ................................................................... 4

*Drake v. Lab. Corp. of Am. Holdings*,
  458 F.3d 48 (2d Cir. 2006) ............................................................................................ 5

*Ebner v. Fresh, Inc.*,
  --- F.3d ---, 2016 WL 1056088 (9th Cir. March 17, 2016) ........................................... 9

*Elkind v. Revlon Consumer Prods. Corp.*,
  2015 WL 2344134 (E.D.N.Y. May 14, 2015) .............................................................. 8

*Ellis v. Tribune Television Co.*,
  443 F.3d 71 (2d Cir. 2006) ............................................................................................ 5

*Evans v. Rich*,
  2014 WL 2535221 (E.D.N.C. June 5, 2014) ................................................................. 8

*Gedalia v. Whole Foods Mkt. Servs., Inc.*,
    53 F. Supp. 3d 943 (S.D. Tex. 2014) .................................................................................. 4, 10

*George v. Blue Diamond Growers*,
    2016 WL 1464644 (E.D. Mo. Apr. 14, 2016) ............................................................................ 2

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
    8 F. Supp. 3d 467 (S.D.N.Y. 2014) ......................................................................................... 10

*Goya Foods, Inc. v. Tropicana Prods., Inc.*,
    846 F.2d 848 (2d Cir. 1988) ...................................................................................................... 3

*Hanig v. Yorktown Cent. Sch. Dist.*,
    384 F. Supp. 2d 710 (S.D.N.Y. 2005) ..................................................................................... 10

*In re Whole Foods Mkt. Grp, Inc. Overcharging Litig.*,
    --- F. Supp. 3d ----, 2016 WL 852796 (S.D.N.Y. Mar. 1, 2016) ............................................ 10

*Kane v. Chobani, LLC*,
    --- F. App'x ----, 2016 WL 1161782 (9th Cir. Mar. 24, 2016) ....................................... *passim*

*Kelly v. Cape Cod Potato Chip Co.*,
    81 F. Supp. 3d 754 (W.D. Mo. 2015) ....................................................................................... 7

*Koenig v. Boulder Brands*,
    995 F. Supp. 2d 5274 (S.D.N.Y. 2014) .................................................................................... 7

*Mains v. Whole Foods Market, Inc.*,
    No. 12cv5652 (N.D. Cal. Apr. 18, 2016) ................................................................................. 2

*Mason v. Coca-Cola Co.*,
    774 F. Supp. 2d 699 (D.N.J. 2011) ........................................................................................... 9

*Perez v. Nidek Co.*,
    711 F.3d 1109 (9th Cir. 2013) .................................................................................................. 3

*Reid v. GMC Skin Care USA Inc.*,
    2016 WL 403497 (N.D.N.Y. Jan. 15, 2016) ............................................................................. 8

*Riley v. Cordis Corp.*,
    625 F. Supp. 2d 769 (D. Minn. 2009) ....................................................................................... 7

*Samet v. Kellogg Co.*,
    No. 12cv01891, Dkt. 177 (N.D. Cal. Apr. 4, 2016) .................................................................. 2

*Smedt v. The Hain Celestial Grp., Inc.*,
    No. 12cv03029 (N.D. Cal. Apr. 7, 2015) ................................................................. 1

*Stewart v. Smart Balance, Inc.*,
    2012 WL 4168584 (D.N.J. June 26, 2012) ............................................................. 7

*Trazo v. Nestle USA, Inc.*,
    2013 WL 4083218 (N.D. Cal. Aug. 9, 2013) ..................................................... 7, 10

*Vassigh v. Bai Brands LLC*,
    2015 WL 4238886 (N.D. Cal. July 13, 2015) ........................................................ 7

*Verzani v. Costco Wholesale Crop.*,
    2010 WL 3911499 (S.D.N.Y.) ................................................................................ 8

*Victor v. R.C. Bigelow, Inc.*,
    2014 WL 1028881 (N.D. Cal. Mar. 14, 2014) ....................................................... 9

**STATUTES**

21 U.S.C. § 343-1 ........................................................................................... 2, 5, 7, 8

G.B.L. § 349(d) ...................................................................................................... 5

G.B.L. § 350(d) ...................................................................................................... 5

**OTHER AUTHORITIES**

Letter Decision, FDA Docket No. 2011-P-0723 (Nov. 19, 2015) .............................. 4

**REGULATIONS**

21 C.F.R. § 101.65(d)(2) .......................................................................................... 9

720219869

# INTRODUCTION AND SUMMARY OF REPLY

Plaintiffs' opposition, as well as developments since KIND's motion was filed, confirms that the complaint should be stayed/dismissed for each reason set out in the motion.[1]

***The "Natural" Claims Are Within FDA's Primary Jurisdiction***: In a decision four-square supportive of KIND's argument (Dkt. 66, pp. 10-12), the 9th Cir. just stayed a "natural" case in deference to FDA's primary jurisdiction in light of FDA's recent request for comments regarding "natural."[2] *Kane v. Chobani, LLC*, 2016 WL 1161782 (9th Cir. Mar. 24, 2016). The holding is equally dispositive here: "[t]he delineation of the scope and permissible usage" of "natural" labeling "'implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than" the courts. *Id*. at *1 (quoting *Astiana v. Hain Celestial Grp.*, 783 F.3d 753, 760 (9th Cir. 2015)).

Courts are staying "natural" cases based on *Kane*. *Smedt v. The Hain Celestial Grp.*, No. 12cv03029, Dkt. 97 (N.D. Cal. Apr. 7, 2015) (order to show cause resulting in stay); *Anderson v. The Hain Celestial Grp.*, No. 14cv03895, Dkt. 62 (N.D. Cal. Apr. 8, 2016) (same);[3] *George v. Blue Diamond Growers*, 2016 WL 1464644 (E.D. Mo. Apr. 14, 2016) (stay).

Plaintiffs' anemic response to all of this (Opp. at 13-14)—*i.e.*, it's "far from certain" what FDA will do or if what it does will benefit KIND—does not remotely justify proceeding in the face of this unambiguous record. The primary jurisdiction doctrine applies to, and requires

---

[1] Plaintiffs' opening assertion that KIND "does not even deny it violated the law" (Opp. at 1) is as wrong (*see* Mem. at 1 n.1) as it is irrelevant. Although KIND denies plaintiffs' premise, KIND's arguments on this motion are not dependent on its compliance with FDA regulations. *See* Mem. at 10, n.6.

[2] *See* FDA Request for Comments re the "Use of the Term 'Natural' in the Labeling of Human Food Products," Dkt. 67-3 ("FDA's Request"). As detailed in KIND's motion (Dkt. 66 ("Mem.") at 2-4, 11-12), FDA's Request goes to the heart of the "natural" allegations in this case, *i.e.*, "what type(s) of ingredients would disqualify the food from bearing the term," and whether "natural" labeling is appropriate for "foods that are genetically engineered or contain ingredients produced through the use of genetic engineering." FDA's Request at 69905, 69908.

[3] Likewise, this week the same court recognized that *Kane* "provides a[] basis to stay" a "natural" case. *Mains v. Whole Foods Market, Inc.*, No. 12cv5652, Dkt. 74 at 3 n.2 (N.D. Cal. Apr. 18, 2016).

1

a stay of, plaintiffs' "natural" claims, and the resulting stay should apply to whatever remains of this case following the Court's ruling on this motion.[4]

***The "Healthy" Claims Are Preempted***: Plaintiffs may not enforce the FDCA under the guise of a state consumer deception lawsuit. Such claims are barred by *Buckman* implied preemption. Plaintiffs confuse *Buckman* preemption with express preemption under 21 U.S.C. § 343-1, an argument KIND does ***not*** make. They then argue why express preemption does not apply to this case. In explaining why express preemption does not apply (a proposition KIND does not dispute on this motion), plaintiffs repeatedly concede the underlying record that establishes *Buckman* preemption.

To escape preemption under *Buckman*, plaintiffs would have to allege that reading "healthy *and* tasty" caused them to conclude—and then materially rely on the fact that—the bars contained exactly one gram or less saturated fat, either because they had studied and were aware of FDA's "healthy" regulations, or because they otherwise believed that to be the meaning of "healthy *and* tasty." It is no surprise that plaintiffs do not and cannot make these allegations: (i) they are not regulatory experts, and (ii) "healthy *and* tasty" says nothing about saturated fat content and, moreover, the Nutrition Facts Panel accurately discloses the exact amount of "Saturated Fat" per serving, to the gram. *See* n.11, *infra; see also* Mem. at 7, 19-20 (Dkt. 67-1). Instead, as plaintiffs repeatedly acknowledge in their complaint (at ¶¶ 5, 54, 60-62) and opposition (at 2, 4, 6), their "healthy" claims are entirely derivative of, identical to, and perfectly "mirror" FDA's "healthy" regulations. By conceding that their claims are identical to and exist "*because* the conduct violates the FDCA"—*i.e.*, they are suing because the "healthy"

---

[4] Earlier this month—and "[i]n light of the Ninth Circuit's ruling" in *Kane*—the Northern District of California stayed an *entire* consumer class action "under [the] primary jurisdiction doctrine," even though only one of the labeling claims was subject to primary jurisdiction under *Kane*. *Samet v. Kellogg Co.*, No. 12cv01891, Dkt. 177 (N.D. Cal. Apr. 4, 2016). Similarly here, as a matter of efficiency, whatever is left of the complaint following this motion should be stayed in its entirety rather than litigated piecemeal.

labeling statement allegedly violates the FDCA, *not* because the statement deceived them about the amount of saturated fat in the product—they run squarely into *Buckman* preemption because plaintiffs do not have standing to enforce the FDCA. *See* Mem. at 8 (quoting *Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013)).

***The "Non-GMO" Claims Fail***: Plaintiffs' opposition also confirms that they lack standing to challenge "non-GMO" labeling because no plaintiff read or relied on the GMO statement. It also confirms they have no plausible basis to allege deception from the challenged labeling statements. For all these reasons, the complaint should be dismissed.

I. **THE PRIMARY JURISDICTION DOCTRINE APPLIES TO THIS ACTION**

   A. **Plaintiffs' "Natural" Claims Implicate Highly Technical Policy Issues**

Relying on *Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848 (2d Cir. 1988), a case addressing primary jurisdiction over trademark claims (*see id.* at 852), plaintiffs describe their "natural" claims as purely "legal in nature" and therefore "within the traditional realm of judicial competence." Opp. at 10. But before reaching any questions that might be within the Court's traditional scope, this Court would first have to untangle and assess plaintiffs' GMO allegations and then determine whether 11 different ingredients are compatible with "natural" labeling of food products. It's worth repeating that plaintiffs, themselves, are unable to offer a single, coherent definition of "natural." *See infra* at 7.

Plaintiffs' say-so (Opp. at 10) that the issues are nevertheless "simple," flatly ignores: (i) the substantial resources that FDA is devoting to the issues; (ii) the 4,830 (and counting) comments received to date in response to FDA's Request; (iii) that prior policy statements issued by FDA on "natural" labeling were not intended to address "genetic engineering or other forms of genetic modification" or "food processing or manufacturing methods" (Dkt. 67-3 at 69905); and (iv) FDA's recent conclusion that "foods derived from [GMO] sources . . . do not .

3

. . differ from other foods in any meaningful or uniform way," Letter Decision, FDA Docket No. 2011-P-0723 (Nov. 19, 2015) (*see* Mem. at 22-23). Unquestionably, these issues "'implicate[] technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch.'" *Kane*, 2016 WL 1161782, at *1 (quoting *Astiana*, 783 F.3d at 760).

B. **There Is A Clear Danger Of Inconsistent Labeling Standards**

Deference to FDA's ongoing regulatory process will avoid conflicts arising from court rulings in the "natural" cases pending across the country, and instead allow FDA to resolve the issues on a uniform, nationwide basis. Mem. at 14-15. Plaintiffs' baffling response—that judicial resolution of *their* claims would only create "natural" labeling standards "*in this specific instance*" (Opp. at 12; emphasis added)—proves the *exact* point. Conflict necessarily will arise if, as plaintiffs advocate, "natural" labeling issues are decided on a jurisdiction-by-jurisdiction, court-by-court, case-by-case, and product-by-product basis. Under plaintiffs' proposal, KIND—let alone the food industry—could be subject to differing "natural" labeling requirements, even as to the same products. Moreover, KIND could become subject to labeling requirements via judicial decision, only to be forced to switch its labels once FDA "speaks directly to the question." *Coyle v. Hornell Brewing Co.*, 2010 WL 2539386, at *4 (D.N.J. June 15, 2010). A stay avoids inconsistency resulting from "add[ing] another definition to the confusing, piecemeal, state-by-state construction of what may qualify as a 'natural' product." *Gedalia v. Whole Foods Mkt. Servs., Inc.*, 53 F. Supp. 3d 943, 958 (S.D. Tex. 2014).[5]

---

[5] Plaintiffs also claim (Opp. at 14) that even if FDA issues formal regulations *allowing* KIND to continue the "natural" labeling, that would not impact their claims for damages. Plaintiffs are mistaken. First, there is no impediment to application of express preemption under § 343-1 to later passed regulations; § 343-1 pre-dates the putative class period and "there have been no subsequent substantive changes in the relevant preemption and saving clauses." *Drake v. Lab. Corp. of Am. Holdings*, 458 F.3d 48, 58 n.9 (2d Cir. 2006) (questions of "[w]hether the current versions of the relevant federal statutes and regulations apply retroactively" are "largely immaterial"). Second, "safe harbor" provisions in the consumer protection statutes that plaintiffs are suing under (*e.g.*, G.B.L.

4

### C. A "Prior Application" Is Pending, And Speculation About Exactly When And How FDA Might Act Is Irrelevant

FDA's Request is a response to applications made to FDA, unambiguously satisfying one of the four *Ellis* primary jurisdiction factors. As the Request itself states, FDA initiated the proceedings in response to four citizen petitions and requests from "three Federal district courts" presiding over private litigation seeking guidance on whether challenged products "may be labeled as 'Natural,' 'All Natural,' and/or '100% Natural.'" Dkt. 67-3 at 69905, 69907. Prior applications, by themselves, "will usually support applying the doctrine of primary jurisdiction." *Church & Dwight Co. Inc. v. SPD Swiss Precision Diagnostics, GmbH*, 2014 WL 2526965, at *16 (S.D.N.Y. June 3, 2014) (citing *Ellis v. Tribune Television Co.*, 443 F.3d 71, 89 (2d Cir. 2006)). Incredibly, plaintiffs answer to all of this is simply to deny that FDA ever received a "prior application." *See* Opp. at 12-14.

Plaintiffs' speculation about when or how FDA will act (Opp. at 14-16) is irrelevant. When and how FDA acts is exactly the type of decision Congress has entrusted to the agency. In any event—and particularly given that FDA is only now *beginning* its deliberative process— any issue over timing is far off in the future and should be dealt with if and when it arises.[6]

### D. Primary Jurisdiction Decisions In "Natural" Cases That Pre-Date FDA's Request Are Supportive Of Primary Jurisdiction Here

Plaintiffs rely on decisions declining to apply the primary jurisdiction doctrine in "natural" cases, but, significantly, the decisions *pre-date* FDA's November Request for

---

§§ 349(d) & 350(d)) independently provide a "a complete defense" to liability "[w]here the FDA has explicitly endorsed the particular facet of the labeling which is claimed to be inadequate." *Am. Home Prods. Corp. v. Johnson & Johnson*, 672 F. Supp. 135, 145 (S.D.N.Y. 1987) (citation omitted). Third, it is impossible to know the impact of FDA's yet-to-occur action. Nothing, for example, would prohibit FDA from declaring a phase-in period for new "natural" labeling regulations during and before which foods will not be deemed misbranded. *See, e.g., Backus v. Nestlé USA, Inc.*, --- F. Supp. 3d ----, 2016 WL 879673, at *3 (N.D. Cal. Mar. 8, 2016) (allowing 3-year compliance period to remove ingredient after FDA determined it was no longer generally recognized as safe).

[6] There is no basis for plaintiffs' conjecture that this process could take "up to nine years to complete" (Opp. at 16) because FDA spent nine years developing regulatory guidance on "gluten free" labeling. That was a completely different issue implicating different public interests, policy issues, and allocation of the agency's resources.

comments on "natural" labeling. Not only did these decisions pre-date FDA's Request, but they are premised *on the fact that*, at the time, there was no FDA Request. *See, e.g.*, *Ault v. J.M. Smucker Co.*, 2014 WL 1998235, at *4 (S.D.N.Y. May 15, 2014) (*because* FDA is not focusing on "natural" labeling, "resort to the agency *at this time* would be unavailing;" emphasis added). Plaintiffs not only ignore these changed circumstances, but fail to acknowledge that the *way* the circumstances have changed squarely places these decisions on the list of decisions *supporting* primary jurisdiction now. And, of course, FDA's on-going work perfectly overlaps with the specific allegations in the complaint. *See* Mem. at 2-3.

Likewise, plaintiffs provide no persuasive reason why the recent *Astiana* and *Kane* decisions are not directly applicable here. Plaintiffs argue that because the *Kane* decision *also* stayed "evaporated cane juice" claims, the decision is somehow inapplicable. Opp. at 14, n.15. But *Kane*'s stay of "natural" claims was entirely independent of its "evaporated cane juice" ruling. Moreover, *Kane*'s additional stay of the evaporated cane juice claims—based on on-going FDA action on that issue—is entirely supportive of staying plaintiffs' "natural" claims.

Plaintiffs suggest that *Astiana* stands for the proposition that staying this case on primary jurisdiction grounds would result in "needless[] delay." Opp. at 14-16. *Astiana*, however, was decided months *before* FDA issued its Request, and despite the fact that—at the time *Astiana* was decided—"FDA had shown some reticence to define 'natural'" due to "the complexities of the issue." *Astiana*, 783 F.3d at 761. In other words, there is far *less* potential for delay now than there was at the time the Ninth Circuit decided *Astiana*.

II. **PLAINTIFFS CANNOT DEFINE "NATURAL" OR "ALL NATURAL"**

KIND also demonstrated that plaintiffs' "natural" claims fail because they do not allege a definition that is either "objective" or "plausible." *See* Mem. at 20-24. Apparently agreeing, plaintiffs abandon their varied definitions, and now concede that there is no "universally

6

understood definition." Opp. at 19. As even their own cases recognize, however, their "natural" claims now necessarily fail based on the failure to define the term. *Vassigh v. Bai Brands LLC*, 2015 WL 4238886, at *4 (N.D. Cal. July 13, 2015) (complaint must plausibly "describe what each Plaintiff believed the statements to mean at the time of purchase").[7]

## III. THE "HEALTHY" CLAIMS SHOULD BE DISMISSED

### A. Plaintiffs' "Healthy" Claims Are Preempted Under *Buckman*

*Buckman* bars plaintiffs' "healthy" claims because they "would not exist absent the federal regulatory scheme established by the FDCA." *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 777 (D. Minn. 2009) (citing *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 352-53 (2001)). Plaintiffs oppose this argument by attacking express preemption under 21 U.S.C. § 343-1, a completely different type of preemption that KIND is not pressing in this motion.[8]

Significantly, plaintiffs do *not* attempt to show that their claims exist independent of FDA's "healthy" regulations. On the contrary, plaintiffs confirm that their claims are derived from and "mirror" FDA's regulatory definition of "low saturated fat" and FDA's warning letter to KIND. *See* Opp. at 2, 4, 6. While that may be an understandable defense against a § 343-1 express preemption argument, it is the *exact* record that supports *Buckman* preemption:

> [A] state law claim only endures [under *Buckman*] if it manages to incorporate, ***but not depend entirely upon***, an FDCA violation and is premised on conduct that would give rise to liability under traditional common law principles. ***On the other hand, if [the] defendant's conduct . . . would not expose it to liability but for the FDCA, then the plaintiff is effectively suing for a violation of the FDCA***

---

[7] *See also Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 761 (W.D. Mo. 2015) (dismissing false advertising claims where the plaintiff "failed to provide a plausible or applicable definition for the term 'natural'"); *Trazo v. Nestle USA, Inc.*, 2013 WL 4083218, at *10 (N.D. Cal. Aug. 9, 2013) (plaintiffs "fail[ed] to allege . . . the circumstances in which they themselves read the labels of the named products and interpreted those labels"); *Chin v. Gen. Mills, Inc.*, 2013 WL 2420455, at *9 (D. Minn. June 3, 2013) (plaintiffs "ha[d] not alleged with any specificity what they believed '100% Natural' to mean").

[8] *See* Opp. at 4-8 (citing *Koenig v. Boulder Brands*, 995 F. Supp. 2d 5274 (S.D.N.Y. 2014); *Stewart v. Smart Balance, Inc.*, 2012 WL 4168584 (D.N.J. June 26, 2012); *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955 (E.D.N.Y. July 21, 2010)) (all addressing express preemption under 21 U.S.C. § 343-1(a) or conflict preemption). None of these cases cites *Buckman* or applies its holding in comparable circumstances.

7

***(no matter how the plaintiff labels the claim), and the plaintiff's claim is thus impliedly preempted*** under *Buckman.*

*In re Bayer Corp.*, 701 F. Supp. 2d 356, 369 (E.D.N.Y. 2010) (emphasis added).[9]

In particular, plaintiffs have no response to Judge McMahon's opinion in *Verzani v. Costco Wholesale Crop.*, 2010 WL 3911499 (S.D.N.Y.), a "thorough and well-reasoned" decision affirmed by the Second Circuit (432 F. App'x 29, 30 (2d Cir. 2011)), which was based upon a record indistinguishable in material part from this case. Plaintiffs' assertion that *Verzani* is "inapposite" (Opp. at 9 n.9) is as conclusory and self-serving as it is wrong.[10]

### B. Plaintiffs Do No Allege Deception Independent Of FDA's Regulations

Plaintiffs do not base deception allegations on the actual amount of saturated fat in the products, and for good reason: the label accurately "discloses the saturated fat content." Complt. ¶ 58. And plaintiffs challenge to the (known) amounts of saturated fat as "unhealthy" is ***only*** in reference to the label's alleged non-compliance with FDA's implied nutrient-content regulations. *See, e.g.*, Opp. at 22 (citing Complt. ¶ 54 (stating requirements for "healthy" under 21 C.F.R. § 101.65(d)(2)). But that is the theory barred under *Buckman* because it plainly "turns on an interpretation of an FDCA regulation." *In re Bayer*, 701 F. Supp. at 371.[11]

---

[9] As KIND showed (Mem. at 8-10), courts in this District and across the country have held similarly. *See also Reid v. GMC Skin Care USA Inc.*, 2016 WL 403497, at *10 (N.D.N.Y. Jan. 15, 2016) (dismissing false advertising claims under *Buckman* premised on "allege[d] violations of the FDCA, because there is no federal private right of action to enforce the FDCA"); *Elkind v. Revlon Consumer Prods. Corp.*, 2015 WL 2344134, at *9 (E.D.N.Y. May 14, 2015) (*Buckman* bars false advertising claims that "arise because Plaintiffs allege that the [product labels] violate the FDCA"). Plaintiffs cite a handful of cases that did not find preemption (Opp. at 9 n.9), but those decisions neither address or understand *Buckman* nor give it its due and, in any event, are not binding on this Court.

[10] Plaintiffs are also mistaken (*see* Opp. at 4) that their warranty claims "cannot be preempted." *See In re Bayer Corp.*, 701 F. Supp. 2d at 369 (recognizing that *Buckman* preemption applies to warranty theories that are "wholly dependent upon the federal violations and would not exist absent the federal violations") (citation omitted); *see also Evans v. Rich*, 2014 WL 2535221, at *2 (E.D.N.C. June 5, 2014) ("*Buckman* has been applied in particular contexts to impliedly preempt such state law claims as breach of warranty").

[11] KIND showed that plaintiffs cannot avoid *Buckman* preemption by phrasing their FDCA enforcement claim as a failure to disclose, *i.e.*, KIND "does not make known that these content levels exceed federal requirements" (Complt. ¶ 58; *see* Mem. at 2, 4, 9). That theory is nothing more than alleging a violation of the FDCA and is, therefore, preempted. The theory also fails because "[i]t is simply not plausible that consumers would be aware of FDA regulations regarding 'nutrient content' [claims]," *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 705 n.4

8
720219869

KIND also demonstrated that, as a matter of law, reasonable consumers understand that "healthy" and "low saturated fat" are not equivalents. Many foods (*e.g.*, avocados, salmon, nuts, seeds) are recognized as healthy and contain more than 1 gram of saturated fat per serving. Mem. at 18-19. Plaintiffs' insistence that reasonable consumers might scour the small print on the back of the wrapper and interpret "[h]ealthy *and* tasty" (Dkt. 67-1) to mean that the product is "low in saturated fat" according to FDA's regulatory definition—despite the fact that the statement doesn't mention saturated fat at all and the label contains a separate, clear and unambiguous disclosure of the products *actual* saturated fat content—flips the reasonable consumer standard on its head. *See Ebner v. Fresh, Inc.*, --- F.3d ----, 2016 WL 1056088, at *4-*5 (9th Cir. March 17, 2016) (reasonable consumers cannot be deceived where the label provides accurate and objective information sufficient to make an informed purchasing decision). The saturated fat disclosures on the Nutrition Facts Panel (Dkt. 67-1) are not inconsistent with "healthy" or any other statement on the label; the panel simply provides consumers with additional, relevant, and accurate nutritional information and provides the proper context for consumers to decide for themselves whether the nutritional value of the food comports with their understanding of "healthy."

## IV. PLAINTIFFS LACK STANDING TO CHALLENGE "NON-GMO" LABELING

### A. No Plaintiff Read Or Relied Upon "Non-GMO"

Plaintiffs' opposition confirms that their failure to allege they actually read or relied on the "non-GMO" labeling (*see* Complt. ¶¶ 9-14) was no oversight, and that, accordingly, they lack standing to challenge that statement. *See Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014). Because plaintiffs do not address this

---

(D.N.J. 2011), much less the specifics of FDA's definition of "low saturated fat." *See also Victor v. R.C. Bigelow, Inc.*, 2014 WL 1028881, at *17 (N.D. Cal. Mar. 14, 2014) ("A statement may technically violate some law and yet a reasonable consumer may have no dashed expectation about it.").

9

argument in their opposition or request leave to re-plead, this Court can and should dismiss their claims challenging "non-GMO" labeling. *See, e.g.*, *Hanig v. Yorktown Cent. Sch. Dist.*, 384 F. Supp. 2d 710, 723-24 (S.D.N.Y. 2005).

### B. Plaintiffs Do Not Allege That Products *They* Purchased Contained GMOs

Even if plaintiffs had standing to challenge "non-GMO," they still fail to "connect the dots" to a product *they* actually purchased. *Trazo v. Nestle USA, Inc.*, 2013 WL 4083218, at *10 (N.D. Cal. Aug. 9, 2013). Allegations that "89% of corn" in the U.S. is "genetically modified" (Complt. ¶ 49) and that "testing" purportedly shows GMOs "in at least *some* of" the challenged products (*id.*) is no substitute for the named plaintiffs plausibly alleging actual injury to *themselves*. *In re Whole Foods Mkt. Grp, Inc. Overcharging Litig.*, --- F. Supp. 3d ----, 2016 WL 852796 (S.D.N.Y. Mar. 1, 2016). As in *Whole Foods*, "a claim based only on probabilistic evidence of injury, devoid of any factual allegations particular to the plaintiff and without a basis to plausibly infer that all covered products were implicated, does not adequately plead injury-in-fact." *Id*, at *9. Although plaintiffs now say that "every bar Plaintiffs tested came back positive for GMOs" (Opp. at. 20), this "fact" is not alleged in the complaint. Even if it were, plaintiffs could draw no more from it than they do already, which is that testing purportedly shows GMOs "in at least *some* of the products," but not the products that plaintiffs themselves actually purchased. Complt. ¶ 49.

### CONCLUSION

For the foregoing reasons, KIND respectfully requests that the Court grant its motion to dismiss.

10

DATED: April 20, 2015											Respectfully Submitted,

KIND LLC and
KIND MANAGEMENT, INC.

By:  /s/ *Dale J. Giali*
    Dale J. Giali
    Keri E. Borders
    Mayer Brown LLP
    350 South Grand Avenue, 25th Floor
    Los Angeles, CA  90071-1503
    Telephone: (213) 229-9500
    Facsimile:  (213) 625-0248
    Email: dgiali@mayerbrown.com

    *Counsel for Defendants KIND LLC and KIND Management, Inc.*