UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
IN RE:                               :

                                    :      15-MD-2645 (WHP)
                                    :      15-MC-2645 (WHP)

KIND LLC "HEALTHY AND ALL    :
NATURAL" LITIGATION             :

                                    :      <u>OPINION & ORDER</u>
                                    :
                                    :

*This Document Relates to All Actions*   :
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, United States District Judge:

        Defendants KIND LLC and KIND Management, Inc. (together, "KIND") seek dismissal of Plaintiffs' Amended Consolidated Class Action Complaint (the "Amended Complaint"). Plaintiffs allege that KIND deceptively marketed its products as "natural" and "non-GMO" even though they contain synthetic and genetically modified ingredients. This Court previously stayed the "natural" claim. KIND now seeks to dismiss or stay the "non-GMO" claim.

        Separately, Plaintiffs move to lift the stay of the "natural" claim. They assert that the Federal Drug Administration's ("FDA") rulemaking process to define the term "natural" has stalled since May 2016 when the agency closed its notice and comment period. Plaintiffs are eager to forge ahead on their "natural" claim in tandem with their "non-GMO" claim, and contend that indefinitely staying the "natural" claim will result in undue delay and prejudice.

        For the reasons that follow, KIND's motion to dismiss or stay the "non-GMO" claim is granted in part and denied in part, and Plaintiffs' motion to lift the stay on the "natural" claim is denied without prejudice.

BACKGROUND

I.    Relevant Procedural History

      A.  Motion to Dismiss the Original Complaint

            On September 15, 2016, this Court granted in part KIND's motion to dismiss the

original complaint.  See In re KIND LLC "Healthy and All Natural" Litig., 209 F. Supp. 3d 689

(S.D.N.Y. 2016).  As an initial matter, this Court disposed of the original complaint's "healthy"

claim after Plaintiffs stipulated to dismissing it.  (ECF No. 74.)  Invoking the primary jurisdiction

doctrine, this Court stayed the "all natural" claim, finding that the FDA's rulemaking process

should run its course before allowing that claim to proceed here.  Finally, this Court dismissed

without prejudice Plaintiff's "non-GMO" claim on the basis that it was insufficiently pled.

Despite largely granting KIND's motion, this Court provided Plaintiffs with a further opportunity

to re-plead their "non-GMO" claim.

      B.  FDA Rulemaking Process

            In November 2015, the FDA "announc[ed] the establishment of a docket to receive

information and comments on the use of the term 'natural' in the labeling of human food

products, including foods that are genetically engineered or contain ingredients produced through

the use of genetic engineering."  Use of the Term "Natural" in the Labeling of Human Food

Products; Request for Information and Comments, 80 Fed. Reg. 69,905–01, 2015 WL 6958210

(proposed Nov. 15, 2015) (to be codified at 21 C.F.R. pt. 101).  The notice and comment period

ended in May 2016.  Since then, the FDA has gone quiet, leaving various stakeholders with little

clarity on the agency's position.

            On December 15, 2016, the parties jointly provided a status report concerning the

FDA's rulemaking process.  (ECF No. 65.)  Despite injecting their letter with competing

interpretations of what the FDA might do, the parties acknowledged that the agency had not formally issued any guidance since closing its comment period.

C. Executive Order Regarding Regulatory Rulemaking

On February 24, 2017, the parties supplemented their joint status report (see ECF No. 98.), informing this Court of President Trump's January 30, 2017 executive order titled, "Reducing Regulation and Controlling Regulatory Costs" (the "Executive Order"). Exec. Order No. 13771, 82 Fed. Reg. 9339 (Jan. 30, 2017). While the Executive Order does not specifically reference the FDA's rulemaking process, Plaintiffs in particular stressed that an Executive Order rooted in scaling back regulation could stymie the FDA's process of defining "natural."

The Executive Order essentially imposes new requirements on agency rulemaking. First, it directs agencies to identify "at least two existing regulations to be repealed" for every new regulation they seek to implement. (Executive Order § 2.) This requirement essentially offsets the cost of a new regulation by eliminating two old ones. Second, the Executive Order establishes an annual budgeting process to control the cumulative costs imposed by each agency's regulations. For 2017, it required the total cost of new regulations to be zero, unless an exception applied. (Executive Order § 2(b).) In 2018, the Executive Order directs each agency to have a budget that accounts for the reduction of costs imposed by their own regulations. (Executive Order § 3.)

II. Allegations of the Amended Complaint

In their Amended Complaint, Plaintiffs re-allege the stayed "natural" claim and seek to cure the deficiencies previously identified in this Court's Opinion and Order underlying their "non-GMO" claim. The Amended Complaint devotes a section to addressing KIND's non-GMO marketing, alleging, among other things, that "[t]esting completed on June 1, 2016 detected

the presence of GMOs in at least some of [KIND's] Products . . ." and that at least one product tested "positive [for] GMO soy from the ingredient soy protein isolate."  (Amended Consolidated Class Action Complaint, ECF No. 84 ("Compl."), ¶ 33.)

        In total, Plaintiffs assert nine different claims on behalf of a putative nationwide class and/or various state sub-classes: (1) breach of express warranty; (2) unjust enrichment or common law restitution; (3) negligent misrepresentation; (4) violation of New York General Business Law ("NY GBL") § 349; (5) violation of NY GBL § 350; (6) violation of California's Consumers Legal Remedies Act ("CLRA"); (7) violation of California's False Advertising Law ("FAL"); (8) violation of California's Unfair Competition Act ("UCL"); and (9) violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA").

DISCUSSION

I.   Standard

        The allegations in the Amended Complaint are presumed true, with all reasonable inferences drawn in Plaintiffs' favor, for purposes of KIND's motion to dismiss.  Rescuecom Corp. v. Google Inc., 562 F.3d 123, 127 (2d Cir. 2009).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 663, 678 (2009) (citation omitted); Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010).  However, a claim must rest on "factual allegations sufficient to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A pleading that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" fails to state a claim.  Iqbal, 556 U.S. at 678 (citation omitted).

II.    <u>Non-GMO Claim</u>

Plaintiffs allege that KIND's "non-GMO" representations are false because KIND's products contain ingredients derived from genetically modified crops.  According to Plaintiffs, a genetically modified crop is a crop whose genetic material has been altered by humans using genetic engineering techniques.  (Compl. ¶ 2.)  Moreover, "genetically modified organisms" are "organisms in which the genetic material (DNA) has been altered in a way that does not occur naturally," and encompass genetically modified crops.  (Compl. ¶ 2.)

Plaintiffs assert that based on testing completed in June 2016, they discovered the presence of GMOs in some KIND products.  (Compl. ¶ 33.)  They also allege that many other products contain ingredients that were produced using genetically modified crops, such as canola, corn, and soy.  Some of these ingredients were so heavily processed that the GMO DNA from their original sources was no longer detectable in the finished products.  (Compl. ¶ 34.)  The Amended Complaint specifically lists soy lecithin, glucose syrup, vegetable glycerine, canola oil, and ascorbic acid among the "heavily-processed ingredients originating from GMO crops" found in KIND's products.  (Compl. ¶ 35.)

A.  <u>Preemption</u>

KIND argues that the "non-GMO" claim is expressly preempted by the National Bioengineered Food Disclosure Standard, a federal law that took effect on July 29, 2016 (the "National GMO Standard Law").  This statute directs the U.S. Department of Agriculture ("USDA") to establish "a national mandatory bioengineered food disclosure standard with respect to any bioengineered food" by July 2018.  7 U.S.C. § 1639b(a).  Among other things, the USDA must "determine the amounts of a bioengineered substance that may be present in food, as appropriate, in order for the food to be a bioengineered food."  7 U.S.C. § 1639b(b)(2)(B).

The National GMO Standard Law precludes states from establishing state-specific food labeling standards that deviate from the GMO labeling standards codified by the USDA. The statute's preemption clause provides that no state may "directly or indirectly establish . . . any requirement relating to the labeling of whether a food . . . contains an ingredient that was developed or produced using genetic engineering." 7 U.S.C. § 1639i(b). Despite this express preemption provision, the National GMO Standard Law also provides that "[n]othing in this subchapter . . . shall be construed to preempt any remedy created by State or Federal statutory common law right." 7 U.S.C. § 1639j.

The preemption doctrine has its roots in the Supremacy Clause of the Constitution, which provides that the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. This clause "invalidates state laws that interfere with, or are contrary to" federal law. Hillsborough Cty. v. Automated Med. Labs., Inc., 471 U.S. 707, 712–13 (1985) (internal quotation marks and citation omitted); Kraft Foods N. Am., Inc. v. Rockland Cty. Dep't of Weights & Measures, 2003 WL 554796, at *4 (S.D.N.Y. Feb. 26, 2003). When analyzing the scope of a preemption clause, a court must "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996). The "regulation of health and safety, including laws regulating the proper marketing of food, are traditionally within states' historic police powers." Kao v. Abbott Labs. Inc., 2017 WL 5257041, at *5 (N.D. Cal. Nov. 13, 2017) (citing Fla. Lime & Avocado Growers v. Paul, 373 U.S. 132, 144 (1963) ("States have always possessed a legitimate interest in the protection of (their) people against fraud and deception in the

sale of food products at retail markets within their borders.")); <u>Lohr</u>, 518 U.S. at 485.

Section 1639i of the National GMO Standard Law preempts state law.  7 U.S.C. § 1639i (titled "Federal preemption").  While that much is clear, this Court must "nonetheless identify the domain expressly pre-empted" by the statute's language.  <u>Lohr</u>, 518 U.S. at 484.  The preemptive language in the National GMO Standard Law provides that no state "may directly or indirectly establish . . . any requirement relating to the labeling of whether a food . . . is genetically engineered . . . or was developed or produced using genetic engineering."  7 U.S.C. § 1639i(b).  The issue here, then, is whether Plaintiffs seek to "directly or indirectly establish . . . any requirement relating to the labeling of" food containing GMOs.

KIND contends that the National GMO Standard Law preempts Plaintiffs' claims because they rely on "state law requirements that are related to the labeling of whether a food contains an ingredient that was developed or produced using genetic engineering."  (KIND's Memo. of Law in Support of Motion to Dismiss, ECF No. 101 ("Mot."), at 6 (alterations omitted).)  KIND also cites to the voluntary dismissal of a similar case in the District of Vermont, arguing the plaintiffs there "recognized that the preemption provisions applied immediately to the [state] GMO labeling requirements, thereby mooting the lawsuit."  (Mot. at 5 (citing <u>Grocery Mfrs. Assoc. v. Sorrell</u>, Case No. 14cv117 (D. Vt.), ECF No. 160).)

But the state consumer protection statutes on which Plaintiffs' claims rest do not impose a GMO standard or requirement.  Those statutes only provide remedies for representations that are untrue and misleading.  Indeed, the only agency-level guidance on GMO labeling corroborates that view: "Food manufacturers may voluntarily label their foods with information about whether the foods were not produced using bioengineering, as long as such information is truthful and not misleading."  U.S. Food & Drug Administration: GUIDANCE FOR INDUSTRY:

VOLUNTARY LABELING INDICATING WHETHER FOODS HAVE OR HAVE NOT BEEN DERIVED FROM GENETICALLY ENGINEERED PLANTS (July 1, 2016), https://www.fda.gov/RegulatoryInformation/Guidances/ucm059098.htm. "The fact that Plaintiffs' claims are consistent with the current [agency] guidance supports the Court's conclusion that allowing Plaintiffs to pursue their state-law claims would not frustrate Congressional intent in enacting the express preemption provision." Kao, 2017 WL 5257041, at *8. KIND "may not affirmatively be required to disclose its use of bioengineered ingredients (if any exist at all), but Plaintiff[s] [are] only alleging that" the non-GMO claim "might be untrue and misleading if [KIND] in fact does use bioengineered ingredients or processing techniques that render [an] ingredient [genetically modified]." Parker v. J.M. Smucker Co., 2013 WL 451656, at *4 (N.D. Cal. Aug. 23, 2013); see also Fagan v. Neutrogena Corp., 2014 WL 92255, at *1 (C.D. Cal. Jan. 8, 2014).

        Although the Sorrell plaintiffs in the District of Vermont voluntarily dismissed their non-GMO claim, they did so for very different reasons. The non-GMO claim in Sorrell arose from Vermont's Act 120, which directly regulates and imposes labeling requirements on foods containing GMO. See Vt. Stat. Ann. tit. 9, §§ 3041–48 (effective July 1, 2016). Act 120 sought to "[e]stablish a system by which persons may make informed decisions . . . [and] avoid potential health risks of food produced from genetic engineering," and aims to "promot[e] the disclosure of factual information on food labels." § 3041. The parties in Sorrell acknowledged that Act 120's mandate that "food offered for sale by a retailer . . . be labeled as produced entirely or in part from genetic engineering" ran afoul of the National GMO Standard Law's mandates. § 3043(a). Thus, the National GMO Standard Law's express preemption clause foreclosed any claim arising from the violation of Act 120.

Unlike Vermont's preempted labeling statute, however, Plaintiffs here do not seek to impose new standards or requirements in connection with their consumer protection claims. They simply want to ensure that KIND's labels are truthful. Accordingly, Plaintiffs' claims are not preempted by the National GMO Standard Law.

B. Primary Jurisdiction

KIND seeks, in the alternative, to stay the non-GMO claim under the doctrine of primary jurisdiction. "Recourse to the doctrine of primary jurisdiction is appropriate whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." In re KIND, 209 F. Supp. 3d at 693 (ellipses omitted).

Like the "all natural" claim, KIND contends that the non-GMO claim, in view of the National GMO Standard Law, should be stayed pending the USDA's determination of a GMO standard. (Mot. at 7.) As it did in its previous Opinion and Order, this Court considers the application of the primary jurisdiction doctrine under four factors: (1) whether the issue is within the conventional experience of judges or involves technical or policy considerations within the agency's field of expertise; (2) whether the issue is within the agency's discretion; (3) whether there is a substantial danger of inconsistent rulings; and (4) whether a prior application regarding this issue has been made to the agency. Ellis v. Tribune Television Co., 443 F.3d 71, 82–83 (2d Cir. 2006).

i. Conventional Experience of Judges

In its previous Opinion & Order, this Court noted the judicial divide on whether courts can properly adjudicate food labeling disputes, but ultimately expressed its "reluctan[ce] to declare that issues of alleged consumer deception are necessarily outside the conventional

wisdom of judges (or even juries)." In re KIND, 209 F. Supp. 3d at 695. That sentiment applies with equal force today.

KIND urges this Court to stay the "non-GMO" claim on the ground that the National GMO Standard Law expressly directs the USDA to formulate a GMO standard by July 2018. But even if the USDA timely develops a standard, that determination will not have a dispositive effect on Plaintiffs' claims. Courts have routinely held that cases involving the mislabeling of food products are "far less about science than [they are] about whether a label is misleading, and the reasonable-consumer inquiry upon which some of the claims in [these] case[s] depend[] is one to which courts are eminently well suited, even well versed" to handle. In re Frito-Lay N. Am., Inc. All Natural Litig., 2013 WL 4647512, at *8 (E.D.N.Y. Aug. 29, 2013); Ackerman v. Coca-Cola Co., 2010 WL 2925955, at *14 (E.D.N.Y. July 21, 2010) ("The question whether defendants . . . marketed a product that could mislead a reasonable consumer is one courts are well-equipped to handle, and is not an appropriate basis for invoking the primary jurisdiction doctrine.").

There is no doubt that a national GMO standard will be relevant to many of the underlying issues in this action. If the USDA successfully formulates that standard by July 2018, the parties may likely rely on it to strengthen their claims or defenses. Beyond that, however, a GMO standard will not conclusively shed light on whether a reasonable consumer would have been deceived by KIND's representation that its products were GMO free. See, e.g., Lockwood v. Conagra Foods, Inc., 597 F. Supp. 2d 1028, 1035 (N.D. Cal. 2009) (even if FDA were to formally define term "'natural,' federal law would not dispose of plaintiffs' state law claims"). This question is better suited for a jury. But until the underlying claims go to trial, this Court is well-equipped to resolve issues of "whether conduct is misleading." Langan v. Johnson &

Johnson Consumer Cos., Inc., 95 F. Supp. 3d 284, 292 (D. Conn. 2015); Hasemann v. Gerber

Prods. Co., 2016 WL 5477595, at *6 (E.D.N.Y. Sept. 28, 2016); Belfiore v. Proctor & Gamble

Co., 311 F.R.D. 29, 75 (E.D.N.Y. 2015) ("Generally, the judiciary is well-suited to determine a

consumer's reasonable expectations about labeling.").  Accordingly, this factor militates against

a stay.

      B.  Agency's Discretion

     There is no dispute that whether genetically engineered foods may be labeled as

"non-GMO" is within the USDA's discretion.  See 7 U.S.C. §§ 1639b(b)(2)(A)–(C); 1639c(c);

1639b(f); & 6524.  Accordingly, this factor weighs in favor of a stay.

      C.  Substantial Danger of Inconsistent Rulings

     KIND contends that allowing the "non-GMO" claim to proceed just months

before the USDA is expected to formulate a national standard will result in inconsistent rulings

among various courts.  (Mot. at 8 ("Courts addressing GMO labeling claims under a patchwork

of state consumer protection laws inevitably will reach different conclusions.").)  While KIND is

"correct that different judges may rule differently, the Court understands this factor to be

concerned with inconsistent rulings between courts and agencies, not between different courts."

Hasemann, 2016 WL 5477595, at *7; Elkind v. Revlon Consumer Prods. Corp., 2015 WL

2344134, at *10 (E.D.N.Y. May 14, 2015) ("[T]he danger of inconsistency on which the Court

focuses is the danger that the FDA may issue guidance that conflicts with the Court's ruling.").

     Nevertheless, as this Court has previously noted, agency "guidance could explain

whether ingredients" derived from genetically modified crops could be considered "non-GMO."

In re KIND, 209 F. Supp. 3d at 696.  Moreover, staying this action until the USDA offers

guidance—which it is statutorily obligated to do—would "almost certainly help harmonize court

rulings" and avoid any glaring conflicts with the USDA.  In re KIND, 209 F. Supp. 3d at 696.

Accordingly, this factor weighs in favor of a stay.

   D. <u>Prior Application to Agency</u>

   The parties have not formally made applications to the USDA on this issue, but

the agency's work is underway pursuant to the National GMO Standard Law.  Thus, this factor

supports a stay until the USDA has concluded its work.

   E. <u>Potential Delay</u>

   In addition to the four <u>Ellis</u> factors, this Court may "balance the advantages of

applying the doctrine against the potential costs resulting from complications and delay in the

administrative proceedings."  <u>Ellis</u>, 443 F.3d at 83 (quoting <u>Nat'l Commc'ns Ass'n, Inc. v.

AT&T Co.</u>, 46 F.3d 220, 222 (2d Cir. 1995)).  Unlike the FDA's work on the "natural" issue,

there is less of a concern that this action will be needlessly delayed because the USDA is

statutorily mandated to establish a national GMO standard by July 29, 2018.  7 U.S.C.

§ 1639b(a) ("Not later than 2 years after July 29, 2016, the [USDA] shall establish a national

mandatory bioengineered food disclosure standard . . . .").  With a date in place, this Court finds

that Plaintiffs will not be unduly delayed or prejudiced pending the completion of the USDA's

work.

   Accordingly, the "non-GMO" claim is stayed until August 15, 2018 to allow the

parties to review any agency action taken by July 29, 2018 and provide a status update informing

this Court of relevant developments.  If the USDA has not taken any action by that date, or

publicly provided any updates regarding its progress, Plaintiffs are free to file a motion to lift the

stay.

III.    Sufficiency of Claims

        Aside from its preemption and primary jurisdiction arguments, KIND contends that the Amended Complaint is insufficiently pled.  In its prior Opinion & Order, this Court held that "allegations that consumers were deceived by misleading 'non-GMO' labels are potentially cognizable," but dismissed the non-GMO claim without prejudice because Plaintiffs failed to specify which of them had "read and relied on the 'non-GMO' labeling statement prior to purchasing the products," or which of the products contained GMOs.  In re KIND, 209 F. Supp. 3d at 697.  Further, Plaintiffs' reference to genetically modified crops was insufficient because it did not tie the crops "to the KIND products purchased by Plaintiffs."  In re KIND, 209 F. Supp. 3d at 698.

        The state consumer protection claims at issue here require Plaintiffs to plausibly allege that they were deceived by KIND's advertising and that they suffered actual injury to money or property.  Exxonmobil Inter-America, Inc. v. Advanced Info. Eng'g Servs., Inc., 328 F. Supp. 2d 443, 449 (S.D.N.Y. 2004) (NY GBL § 349 "liability attaches primarily where a party's misrepresentations . . . have the potential to be repeated in order to deceive numerous similarly situated buyers"); Greenlight Capital, Inc. v. Greenlight (Switz.) S.A., 2005 WL 13682, at *6 n.8 (S.D.N.Y. Jan. 3, 2005) (NY GBL § 350 is "based on a specific type of deception, to wit, false advertising"); Wilson v. Frito-Lay N. Am., Inc., 2013 WL 1320468, at *5 (N.D. Cal. Apr. 1, 2013) ("actual likelihood of deception in UCL, FAL, and CLRA cases is judged by a reasonable consumer standard"); Kais v. Mansiana Ocean Residences, LLC, 2009 WL 825763, at *1–2 (S.D. Fla. Mar. 26, 2009) (FDUTPA requires deceptive or unfair practice, causation, and actual damages).  Moreover, Plaintiffs' common law claims—breach of warranty, unjust enrichment, and negligent misrepresentation—must arise from Plaintiffs' reliance on deceptive conduct.

Glidepath Holding B.V. v. Spherion Corp., 590 F. Supp. 2d 435, 457 (S.D.N.Y. 2007) (negligent

misrepresentation); Avola v. Louisiana-Pacific Corp., 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013)

(breach of express warranty); Greene v. Gerber Prods. Co., 262 F. Supp. 3d 38, 77 (E.D.N.Y.

2017) (unjust enrichment).

        As an initial matter, KIND argues that Plaintiffs' allegations rest on an improper

syllogism—that is, Plaintiffs rely on a general statistic that "approximately 90% of canola, 89% of

corn, and 94% of soybeans grown in the United States are genetically modified" to improperly

infer that the soy, corn, and canola-based ingredients found in KIND products are derived from

such crops.  (Mot. at 11.)  But that is not all Plaintiffs do.  They allege that "[i]ndependent testing

[ ] confirmed the presence of GMOs in at least some of the [KIND] Products."  (Compl. ¶ 48.)

Moreover, although Plaintiffs cannot specifically tie each ingredient found in every KIND product

to a domestic GMO crop, they are not required to do so at this stage.  Rather, their allegations,

taken together, sufficiently establish a basis for their claims.  Ault v. J.M. Smucker Co., 2014 WL

1998235, at *5 (S.D.N.Y. May 15, 2014) ("While Plaintiff is not certain Crisco Oil contains

GMOs, the factual allegations—taken as a whole—are more than sufficient to raise a right to

relief above the speculative level.").

        Indeed, Plaintiffs take a general, but overwhelming, statistic about genetically

modified crops in the United States and plausibly connect it to the relevant ingredients found in

KIND's products.  Put another way, they identify the KIND products carrying particular GMO

ingredients that are likely to have been derived from the vast majority of GMO crops in the

United States.  This is not an implausible inference to make on a motion to dismiss.  Ault, 2014

WL 1998235, at *4 n.4; see also Parker, 2013 WL 451656, at *2 (finding sufficiently plausible

the allegation that "it is highly likely that" Defendant's products contain non-natural ingredients

"given the percentage of GM crops in the U.S.").

Additionally, KIND asserts that the Amended Complaint fails to specify the type or level of GMOs that a product must contain to make the label "non-GMO" misleading. But this issue is more appropriately addressed in discovery and on summary judgment. "It is not unreasonable as a matter of law to expect that a product labeled ['non-GMO'] contains only natural ingredients . . . [t]his is true even though foods labeled 'non-GMO' may lawfully contain some [genetically modified] ingredients." Segedie v. Hain Celestial Grp., Inc., 2015 WL 2168374, at *11 (S.D.N.Y. May 7, 2015) (finding this issue better suited for resolution by a jury and that "[a] fortiori, it is enough that Plaintiffs allege that 'natural' communicates the absence of synthetic ingredients") (emphasis added).

The more critical question on this motion to dismiss is whether the allegations sufficiently posit a theory of liability under which a reasonable consumer would have been deceived by KIND products bearing the "non-GMO" label. The Amended Complaint sets forth the genetically modified makeup of KIND's products, alleges that this composite belies the "non-GMO" label, and concludes that if KIND's products contain genetically modified ingredients then a "non-GMO" tag may be false or misleading to a reasonable consumer. (See e.g., Compl. ¶¶ 7, 17, 56, 93.) Of course, the "truth of this theory remains to be litigated, but it cannot be dismissed on the pleadings." Parker, 2013 WL 4516156, at *3. The Plaintiffs have, for now, addressed this Court's concerns regarding the various shortcomings besetting their original complaint—they identified the plaintiffs who relied on the "non-GMO" label (Compl. ¶¶ 7–10); specified which KIND products contain GMOs (Compl. ¶¶ 33, 35(a)–(e)); and established, through independent testing and plausible allegations, the likelihood that GMOs in KIND products are linked to the vast majority of genetically modified crops (Compl. ¶¶ 33–35, 48).

Accordingly, although the "non-GMO" claim is stayed pending the completion of the USDA's work on establishing a national GMO standard, KIND's motion to dismiss for failure to state a claim is denied.

IV.    Natural Claims

Plaintiffs' "natural" claim has been stayed since September 2016.  Despite deferring to the FDA's work on formulating a "natural" definition, this Court held that it would "reconsider the appropriateness of continuing the stay as the FDA's process unfolds."  In re KIND, 209 F. Supp. 3d at 697.  The decision to continue or lift the stay is a matter within this Court's discretion.  See Ratner v. Chem. Bank N.Y. Trust Co., 309 F. Supp. 983, 986 (S.D.N.Y. 1969) ("Although the doctrine of primary jurisdiction is in general applied to insure uniformity of treatment and regulation, its application and the granting of a stay pending administrative action rests in the sound discretion of the court considering all facts and circumstances presented to it."); Swearingen v. Santa Cruz Natural Inc., 2014 WL 2967585, at *4 (N.D. Cal. July 1, 2014); Gitson v. Clover Stornetta Farms, 2014 WL 2638203, at *9 (N.D. Cal. June 9, 2014) ("[T]he Court will stay the action, and revisit the stay in six months."); Swearingen v. Late July Snacks LLC, 2014 WL 2215878, at *3 (N.D. Cal. May 29, 2014) ("[T]he Court finds it is appropriate to stay the action and to revisit whether the stay is still appropriate at a status conference in five months['] time.").

Almost a year and a half has elapsed since the stay.  In the interim, the FDA has exhibited little discernible activity.  When this Court stayed the "natural" claim, it did so on the basis that "the issue of whether the particular ingredients referenced in the Complaint rendered the 'all natural' label misleading seems to be particularly within the FDA's discretion."  In re KIND, 209 F. Supp. 3d at 695.  Agency discretion aside, this Court found that two other Ellis factors—

the risk of inconsistent rulings and prior application to the FDA—weighed in favor of a stay, but only slightly so, in view of countervailing considerations that any FDA definition of "natural" would not "conclusively resolve [the] issue[s]" in this case. In re KIND, 209 F. Supp. 3d at 695. Entering a stay seemed like the more prudent and appealing course of action at the time because the "FDA ha[d] already completed its notice and comment period" and appeared "determined to address the 'all natural' labeling issue." In re KIND, 209 F. Supp. 3d at 696. Optimistic that the FDA would achieve the two principal objectives of primary jurisdiction—uniformity and expertise—this Court entered the stay.

But that was then, and this is now. Since the stay was entered, very little has happened, at least on the agency front. Undeterred, plaintiffs across the country have continued to file consumer-related claims concerning the misleading and deceptive use of the "natural" label. See, e.g., Stanton v. Sarenton Foods, Inc., No. 17cv2881 (N.D. Cal. 2017); Rhinesmith v. Tradewinds Beverage Co., No. 17cv0408 (C.D. Cal. 2017); Madrigal v. HINT, Inc., No. BC646991 (Cal. Super. Ct. 2017); Yamini v. Eden Creamery, LLC, No. BC684736 (Cal. Super. Ct. 2017); Organic Consumers Assoc. v. R.C. Bigelow, Inc., No. 17CA8375 (D.C. Super. Ct. 2017). Other plaintiffs, whose cases were stayed under circumstances similar to Plaintiffs, have moved to lift the stays in their cases.

The parties contend there are two intervening developments that should inform this Court's decision to lift or continue the stay. First, President Trump's Executive Order directs all agencies to evaluate their existing regulations and make recommendations regarding their appeal, replacement, or modification. While the Executive Order extends to all agencies—not just the FDA or USDA—Plaintiffs fear that the FDA's work on "natural" food labeling will slow to a crawl, delaying any conclusive decision on the term for years. Second, despite the FDA's relative

silence on its progress, Congress has signaled its expectation for the FDA to make headway in

promulgating a uniform standard on "natural." In a July 2017 report accompanying the 2018

Agriculture, Rural Development, Food and Drug Administration, and Related Agencies

Appropriations Bill ("2018 FDA Bill"), the House Committee on Appropriations remarked:

> The Committee commends the FDA for taking the first step towards
> defining the term "natural" and regulating its use on food labeling by
> requesting public comment on a number of relevant questions in a
> November 2015 Federal Register notice. The Committee directs
> FDA to provide a report within 60 days of enactment of this Act on
> the actions and timeframe for defining "natural" so that there is a
> uniform national standard for the labeling claims and consumers and
> food producers have certainty about the meaning of the term.

H.R. Rep. No. 115-232, at 72 (2017) (emphasis added). KIND therefore contends that a stay of

this action should remain in place because the FDA's promulgation of a "natural" definition

appears imminent.

Courts have issued mixed rulings on whether to impose or lift a stay in "natural"

labeling litigation, in view of the glacial pace of agency action. Some have cited the

"congressional interest reflected in th[e] [House Report]" that "makes it likely that the FDA will

address, in a relatively short amount of time, the use of the term 'natural' on food labels." Rosillo

v. Annie's Homegrown Inc., 2017 WL 5256345, at *4 (N.D. Cal. Oct. 17, 2017); see also Kane v.

Chobani, LLC, 645 F. App'x 593, 594 (9th Cir. 2016) ("Given the ongoing FDA proceedings

regarding the terms 'natural' and 'evaporated cane juice,' we conclude that resolution of this

action will not be needlessly delayed and that judicial resources will be conserved by staying

these proceedings."); Scholder v. Riviana Foods Inc., 2017 WL 2773586, at *4 (E.D.N.Y. June

23, 2017). Others, however, have not been as receptive, finding that "the relative benefit of any

ultimate decision [by the FDA]—which will likely be relevant only by analogy to this case—is

not worth the potential wait." de Lacour v. Colgate-Palmolive Co., 2017 WL 6550690, at *4

(S.D.N.Y. Dec. 22, 2017); <u>Mohamed v. Kellogg Co.</u>, No. 14–2449, slip op. at 5–6 (S.D. Cal. Dec. 22, 2017) ("[S]o far the progress of the FDA's deliberations on the matter have proceeded at a glacial pace . . . it has not decided whether it will define the term at all . . . and because this case has already been stayed for nearly two years, Defendant's request to extend the stay is denied."); <u>Pecanha v. Hain Celestial Grp., Inc.</u>, 2018 WL 534299, at *6 (N.D. Cal. Jan. 24, 2017) ("Defendants point to no specific FDA action reasonably anticipated in the near future which warrants delaying this case."); <u>Biffar v. Pinnacle Foods Grp., LLC</u>, 2016 WL 7264973, at *2 (S.D. Ill. Dec. 15, 2016); <u>In re Frito-Lay</u>, 2013 WL 4647512, at *9 (E.D.N.Y. Aug. 29, 2013).

  The House Report does not fully address the question of when the FDA must establish a "natural" standard. Because enactment of the 2018 FDA Bill triggers the 60-day period in which the FDA must provide an action plan and time frame on defining "natural," the House Report's mandate depends on Congress's ability to pass the appropriations bill. Although the House Report was issued in July 2017, Congress has not enacted the bill into law. Without that critical step, the FDA-related mandate in the House Report becomes toothless. At present, the 2018 FDA Bill has been approved at the subcommittee and committee level in both the House of Representatives and Senate. <u>See</u> United States Congress, <u>Appropriations for Fiscal Year 2018, Regular Appropriations</u>, https://www.congress.gov/resources/display/content/Appropriations+for+Fiscal+Year+2018 (last visited Feb. 22, 2018). However, the bill remains under review for initial and final passage by both chambers, and must subsequently be approved by the President.

  Even if the 2018 FDA Bill is enacted, the House Report's directive for the FDA to act with deliberate speed is somewhat constrained by a number of other factors. First, the FDA is only required to report "the actions and timeframe for defining 'natural'" within 60 days.

Therefore, the FDA may, after 60 days, simply provide a time frame setting forth a period of many more months, or years, to fully define "natural." If that happens, this case will remain in judicial purgatory for an indefinite period of time.

Further, although the broad sentiment behind the Executive Order is rooted in cutting regulatory costs, this Court cannot discern a specific impact to the FDA's rulemaking work on defining "natural." Rather, as of October 2017—more than nine months after the Executive Order was issued—it was unclear whether the FDA had suspended its work on formulating food-labeling rules or whether the agency would plow ahead on implementing rules that were under consideration long before the Executive Order.

The pace of the FDA's process is still unclear. There is no indication whether the FDA is earnestly working toward a uniform "natural" standard, or whether it has shelved that effort. See Heather Haddon, FDA Commissioner Wants Closer Look at Health Claims on Packaging, Wall St. J., Oct. 10, 2017, https://www.wsj.com/articles/fda-commissioner-wants-closer-look-at-health-claims-on-packaging-1507673335 (reporting that while FDA Commissioner said the agency is "looking at how to define 'healthy' and 'natural' more uniformly," he has postponed other food labeling rules); Julie Creswell, Is it "Natural"? Consumers, and Lawyers, Want to Know, N.Y. Times, Feb. 16, 2018, https://www.nytimes.com/2018/02/16/business/natural-food-products.html (quoting the FDA Commissioner, "'Consumers have called upon the FDA to help define the term 'natural' and we take the responsibility to provide this clarity seriously. We will have more to say on the issue soon.'"). Neither the House Report nor the Executive Order provide much clarity, instead inviting each party to take what little there is to hypothesize about what the FDA may be doing. See In re Gen. Mills, Inc. Kix Cereal Litig., No. 12–249, slip op. at 1 (D.N.J. Apr. 21, 2017) (The

Executive Order is "very far from an indication that the FDA intends to abandon its regulatory efforts as to the kind of 'natural' labeling claims involved in this action, or that the need for regulatory expertise has abated.").

In view of these observations, this Court believes it prudent to continue staying the "natural" claim, but will limit its duration through the date on which the USDA is expected to define and promulgate the "non-GMO" standard. As the parties both acknowledge, the "non-GMO" and "natural" claims should not be litigated in piecemeal fashion since it would make little sense as a matter of judicial economy for one set of claims to advance to resolution while the other lags behind. (Mot. at 14; Plaintiffs' Memo. of Law in Opp. to Mot. to Dismiss, ECF No. 105, at 23; KIND's Reply in Supp. of Mot. to Dismiss, ECF No. 106, at 9.) Though the pace of regulatory work is always subject to change, Congress has fixed, by statute, a concrete deadline by which the USDA must complete its work on the "non-GMO" claim. 7 U.S.C. § 1639b(a). There is no telling when the FDA will complete its work on the term "natural," much less provide any public guidance on its progress. However, in the interest of litigating the "natural" and "non-GMO" claims concurrently, this Court believes the August 15, 2018 deadline is a sensible benchmark from which it can re-assess whether a stay over both claims is proper. Therefore, like the "non-GMO" claim, the "all natural" claim shall be stayed until August 15, 2018.

While Ellis observed that "considerations of judicial economy should not be considered because the Supreme Court has consistently held that there are only two purposes to consider in determining whether to apply the primary jurisdiction doctrine—uniformity and expertise," it also held that the primary jurisdiction doctrine "relies on the timely and good-faith efforts of regulatory agencies in addressing issues within their domain." 443 F.3d at 91–92. Absent any word from the FDA about its current progress, this Court cannot sit idly by on an

illusory assurance that something is likely to happen.  See <u>Rosillo v. Annie's Homegrown Inc.</u> No. 17–2474, slip op. at 1 (N.D. Cal. Jan. 26, 2018) ("The Court will not indefinitely stay this case on the hope that Congress or the FDA will eventually, at some unknown point time, have something to say on this issue.").  Therefore, if the FDA fails to issue any guidance on the "natural" claim, Plaintiffs may renew their motion to lift the stay.  By then, nearly two years will have elapsed since the stay was first entered, and this Court presumes, without more, that the basis for lifting stay will be substantially stronger.  See <u>Rosillo</u>, slip op. at 1 ("The Court will be disinclined to continue the stay beyond July 2018 unless the FDA has made some indication that the regulatory process is close to completion."); <u>Campbell v. Annie's Homegrown, Inc.</u>, No. 17–7288, slip op. at 1–2 (N.D. Cal. Feb. 7, 2018).

CONCLUSION

For the foregoing reasons, KIND's motion to dismiss the "non-GMO" claim is denied.  Prosecution of the "non-GMO" claim is stayed until August 15, 2018.  Additionally, Plaintiffs' motion to lift the stay of their "all natural" claim is denied without prejudice to renew after August 15, 2018.  The Clerk of Court is directed to terminate the motions pending at ECF Nos. 100 and 108.

Dated: March 2, 2018
   New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.