**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: KIND LLC "HEALTHY AND ALL NATURAL" LITIGATION<br><br>_____<br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Case No. 1:15-md-02645-WHP<br>Case No. 1:15-mc-02645-WHP<br><br>Hon. William H. Pauley III, presiding<br><br>**REPLY MEMORANDUM OF LAW IN SUPPORT OF KIND LLC'S MOTION TO STRIKE DECLARATION OF STEPHEN F. HAMILTON, PH.D.** |

## TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ........................................................................................................1
II. LEGAL ARGUMENT..................................................................................................1
    A. Hamilton's Reply Declaration Is Improper And Should Be Stricken....................1
    B. The Hamilton Report Is Subject To *Daubert*.........................................................2
    C. Hamilton's Opinions And Testimony Should Be Excluded Because They Do Not Assist the Trier of Fact and Are Irrelevant ...............................................3
    D. Hamilton's Opinions And Testimony Are Unreliable..........................................7
    E. Hamilton Is Not Qualified To Opine On Conjoint Surveys .................................9
III. CONCLUSION............................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brown v. Hain Celestial Group, Inc.*,
    2014 WL 6483216 (N.D. Cal. Nov. 18, 2019) ....................................................................... 4

*Daubert v. Merrell Dow Pharms. Inc.*,
    43 F.3d 1311 (9th Cir. 1995) ...................................................................................... 2, 3, 6, 9

*In re Flash Memory Antitrust Litig.*,
    2010 WL 2332081 (N.D. Cal. June 9, 2010) ....................................................................... 2

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997) .............................................................................................................. 9

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    407 F. Supp. 3d 322 (S.D.N.Y. 2019) .................................................................................. 2

*McMorrow v. Mondelez Int'l, Inc.*,
    2020WL 1157191 (S.D. Cal. Mar. 9, 2020) ......................................................................... 3

*In re Rains*,
    428 F.3d 893 (9th Cir.2005) ................................................................................................. 2

*Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n*,
    324 F. Supp. 3d 387 (S.D.N.Y. 2018) .................................................................................. 2

*Singleton v. Fifth Generation, Inc.*,
    2017 WL 5001444 (N.D.N.Y. Sept. 27, 2017) ..................................................................... 8

*Townsend v. Monster Beverage Corp.*,
    303 F. Supp. 3d 1010 (C.D. Cal. 2018) ................................................................................ 2

*Weiner v. Snapple Beverage Corp.*,
    2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ........................................................................ 8

*Wolters Kluwer Fin. Servs. Inc. v. Scivantage*,
    2007 WL 1098714 (S.D.N.Y. Apr. 12, 2007) ....................................................................... 2

**Other Authorities**

Fed. R. Civ. P. 23 ........................................................................................................................ 2, 3

Fed. R. Evid. 702 ............................................................................................................................ 6

I.     **INTRODUCTION**

Plaintiffs' response to the fact that Hamilton has done *nothing* to determine the existence of class-wide damages and that it is speculative that he will be able to do so with reasonable reliability is to (i) attempt to shrink the Court's gate-keeping function over expert witness testimony at class certification, and (ii) try to fix the Hamilton Report via a reply declaration. Neither works. This Court's role in reviewing expert testimony at class certification is not open for debate. Plaintiffs are required to show that the Hamilton Report satisfies the *Daubert* requirements of reliability and relevance in order to be admissible. Moreover, plaintiffs' attempt to back-fill the record with a procedurally improper reply declaration does not help them. The fundamental problems with the Hamilton Report still exist – he still has not designed his proposed damage model, has not disclosed any details or information about his proposed model, and has not shown that a price premium even exists, much less that it can be reliably measured. Accordingly, because the Hamilton Declaration is neither relevant nor reliable, the motion to strike should be granted.

II.    **LEGAL ARGUMENT**

   A.   **Hamilton's Reply Declaration Is Improper And Should Be Stricken**

The Reply Declaration of Stephen F. Hamilton (the "Reply Declaration") is untimely and improper and, therefore, should be stricken. ECF No. 203.

The Reply Declaration is classic improper back-loading. It is new material that should have appeared, if at all, in plaintiffs' moving papers, but instead was prepared after the submission of the class certification papers and the Hamilton Report, after Hamilton was deposed, after KIND submitted its opposition to the motion for class certification, and after KIND moved to strike Hamilton. The attempted do-over is 68 paragraphs long – a paragraph longer than the *initial* Hamilton Report – and contains page after page of previously undisclosed opinions by Hamilton. *Compare* ECF No. 170 with ECF No. 203. Significantly, this is all work that Hamilton easily *could* have done prior to the submission of the Hamilton Report and plaintiffs' motion for class certification. And, if it was necessary for Hamilton to do this work

1

for plaintiffs to meet their burden at class certification (as plaintiffs now appear to acknowledge), then that work *should* have been completed and included in the moving papers.

Under these circumstances, district courts routinely decline to consider new expert opinions submitted on reply. *Wolters Kluwer Fin. Servs. Inc. v. Scivantage*, 2007 WL 1098714, at *1 (S.D.N.Y. Apr. 12, 2007) (striking plaintiff's evidence submitted with its reply brief and not considering it in the court's ruling because "it is established beyond peradventure that it is improper to sandbag one's opponent by raising new matter in reply." (internal citation omitted)). It is improper for a plaintiff to wait to produce evidence to establish the class certification requirements under Fed. R. Civ. P. 23 until the defendant points out deficiencies in his or her showing. *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 324 F. Supp. 3d 387, 395 (S.D.N.Y. 2018); *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1027-1028 (C.D. Cal. 2018) (striking plaintiffs' expert's supplemental report filed in support of class certification reply brief because it constituted new evidence and declining to postpone the hearing on motion for class certification where "such delays could have easily been prevented by Plaintiffs' earlier disclosure of the new survey evidence."); *In re Flash Memory Antitrust Litig.*, 2010 WL 2332081, at *15 (N.D. Cal. June 9, 2010) (striking plaintiffs' rebuttal expert witness declarations as procedurally improper, "[s]ince it is Plaintiffs' initial burden to demonstrate the existence of an ascertainable class, such evidence should have been proffered with Plaintiffs' moving papers in order to afford Defendants a full and fair opportunity to respond."); *In re Rains*, 428 F.3d 893, 902 (9th Cir.2005) (same).

The same result is warranted here and the Reply Declaration should be stricken.

### B.     **The Hamilton Report Is Subject To *Daubert***

Plaintiffs spend most of their opposition attempting to convince the Court that it should stand down on applying *Daubert* to the Hamilton Report because class certification is a "special" proceeding with an extremely low bar of admissibility for expert witness testimony, especially expert witness testimony related to classwide damages. That's wrong; there is no question that the *Daubert* standards of admissibility apply at class certification. *See In re*

2

*Foreign Exchange Benchmark Rates Antitrust Litig.*, 407 F. Supp. 3d 422, 429 (S.D.N.Y. 2019). Indeed, even plaintiffs are required to acknowledge that *Comcast* requires plaintiffs to propose a damages model that is consistent with their theory of liability because "if the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of 23(b)(3)." Opp. at 4 (*citing In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 412 (S.D.N.Y. 2015). Here, Hamilton admits that his proposed hedonic regression model does not attempt to measure damages per plaintiffs' theory. Accordingly, plaintiffs do not meet the very requirement they acknowledge they must. *See McMorrow v. Mondelez Int'l, Inc.*, 2020 WL 1157191 (S.D. Cal. Mar. 9, 2020).

Next plaintiffs repeat the well-worn refrain that KIND's criticism of the Hamilton Report goes to its weight, not its admissibility. To be sure, they cite all the decisions they could find where courts have denied *Daubert* motions where experts (including Hamilton) have been permitted to testify even though they offer only a promise to do the actual expert work in the future. *See* Opp. at 5-6. But those decisions are against the weight of authority that require expert testimony at class certification to meet the requirements of *Daubert* and that an expert's promise to perform a damages calculation in the future is insufficient under Fed. R. Civ. P. 23. *See* ECF No. 188, Opp. to Class Cert. at 21 and fn. 11.

    **C.**    **Hamilton's Opinions And Testimony Should Be Excluded Because They Do Not Assist the Trier of Fact and Are Irrelevant**

Hamilton's opinions and testimony should be excluded because they are irrelevant – they consist of simple conjecture and speculation and, therefore, do not aid the trier of fact. Significantly, the opposition does not address Hamilton's dispositive admissions that he (i) doesn't know if a price premium even exists; and (ii) has no ability or methodology to tie any price premium that may exist to plaintiffs' theory of deception. This alone is sufficient to grant the motion to strike. Instead of addressing these material defects, plaintiffs make vague and tangential assertions, none of which cure Hamilton's failure to meet the fundamental requirements of admissible expert testimony.

*First*, in response to Hamilton's failure to comply with *Comcast,* plaintiffs include a few sentences in their brief that state that Mintel data tracks various forms of "natural" labeling statements – e.g., "all natural, "100% natural, and "all natural product." Opp. at 17. While that may be true, it says nothing about whether Hamilton can model a price premium attributable to *plaintiffs*' definition of "All Natural" and/or "Non-GMO." Plaintiffs, like Hamilton at his deposition, offer no explanation as to how Hamilton's proposed damages model will generate such a price premium (it can't). Hamilton is not even aware of plaintiffs' theory of deception (nor could he be since plaintiffs haven't actually articulated what they believe natural means, how the natural label statement deceived them, or how their expectations in KIND products were frustrated as to natural attributes). Accordingly, Hamilton's proposed damages model, even assuming he can construct it and it produces an alleged price premium (rather generous assumptions), will still fail to measure damages consistent with plaintiffs' theory of deception.

*Second*, plaintiffs are (understandably) silent regarding Hamilton's admission that he is uncertain whether a price premium will exist. ECF No. 182-17, Hamilton Tr. at 35:12-21, 36:3-9. Instead, plaintiffs argue that Hamilton simply must be able to testify about the theoretical basis of a hedonic regression model because without that the "trier of fact would be left to their own devices to understand the concept of a price premium." Opp. at 17. But neither the court nor the trier of fact needs such general education unless and until a price premium model is deemed relevant to this case. Likewise, what has been done in other cases is also irrelevant to whether plaintiffs have met their specific burden in *this* case.[1] Absent a showing by Hamilton

---

[1] Plaintiffs assert that hedonic regression is a "widely utilized and accepted methodology." But they point to zero cases in which an economist, including Dr. Hamilton, has successfully built a hedonic regression model that has reliably calculated a price premium related to a label statement on a consumer package good, let alone products like KIND products. That is because there are none. In the opposition at footnote 3, plaintiff contends Hamilton did so in *Brown v. Hain Celestial Grp., Inc.*, 2014 WL 6483216, at *19 (N.D. Cal. Nov. 18, 2014). That's not true. To the contrary, the cited pages expressly confirm that, like here, all Hamilton did was *propose* to use a hedonic regression, without actually constructing a model. *Id.* To be sure, hedonic regression is a recognized methodology, but it's use outside of litigation has been limited to contexts such as automobiles and real estate to assess the impact on price of various attributes. It's use as a reliable model for measuring a price premium related to labeling claims on

that a price premium related to plaintiff's theory of deception exists and that he has an actual, working, damages model to present to show that plaintiffs (and class members) suffered an actual injury as a result of KIND's allegedly deceptive labeling statements, Hamilton's academic explanation of hedonic regression is irrelevant and unhelpful.

*Finally*, plaintiffs attempt to distance themselves from Hamilton's unequivocal deposition testimony and the academic literature on hedonic regression modeling, both of which confirm that hedonic regression models cannot isolate and account for product attributes where perfect collinearity exists. That means that Hamilton's as-of-yet-to-be-built proposed hedonic regression model will be incapable of isolating a price premium associated with just the "All Natural" label statement because it only appeared on the challenged products as part of the joint "All Natural/Non GMO" label statement (there is perfect collinearity between "All Natural" and Non GMO"). Hamilton's damages model will only assess the price premium associated with *both* of those statements appearing together. ECF No. 182-17 Hamilton Tr. at 70:17-71:14, 80:22-81:10, 82:4-83:17. But that doesn't match plaintiffs theory of deception (that the statements had independent meanings and that they were independently deceptive).

Plaintiffs seek to remedy this fundamental problem by having Hamilton walk back his admissions regarding collinearity. In the Reply Declaration, Hamilton now states that, "depend[ing] on the nature of the merged database" he will create, it may be a possible to control for the different label statements by building and running *different* models, and that "[i]t is standard practice in the economics profession to select the *best fitting* model at the time the model is run." Reply Declaration at ¶ 55 (emphasis added). But a promise of an disclosed, potential fix that will be decided on in the future, is no answer and does not negate Hamilton's prior admission. Hamilton also now claims that his admissions regarding collinearity don't mean what he said, but instead that it is "hypothetically possible" that all snack bars jointly

---

consumer package goods is still only theoretical and untested. And while some courts have permitted plaintiffs to "get past" the class certification phase without showing that their proposed hedonic regression model will actually work, that is a far cry from a "widely utilized and accepted methodology."

5

stated "All Natural" and "Non GMO" which would result in collinearity of the statements for all products in the category. Reply Declaration at ¶ 41.

But this attempted reimagining of his prior testimony is laughable and nonsensical. First, Hamilton's deposition testimony speaks for itself and he has already admitted that collinearity is a fundamental problem with calculating a price premium for the "All Natural" statement on KIND products. That this admission has now been brought to the Court's attention and is inconvenient does not provide a basis to change the admission. Regardless, Hamilton's new "explanation" does not solve the problem. Hamilton explains that because there are (unidentified) products that are labeled "All Natural" but not "Non GMO," he will just apply the results of those products to the KIND products and assume that effects of the "All Natural" label on the other products is the same as for the KIND products. But what impact on price "All Natural" might have with a *different* product does not help the trier of fact determine whether a price premium exists for the challenged *KIND* products. For the KIND products, collinearity exists and the attempted regression of All Natural and Non GMO will always be confounded. That is just one of the many reasons why hedonic regression is not an appropriate or reliable model here and is not helpful to the trier of fact.

Plaintiffs' attempt to remedy the defects in the Hamilton Report through semantics and misleading assertions in his improper supplemental declaration (none of which were subject to discovery or response by KIND's expert) are insufficient. Hamilton's representations (without any factual basis) that he has "no doubt" that his future work will result in exactly the conclusion plaintiffs want it to – a material price premium – is not reliable or admissible expert witness testimony. *Daubert v. Merrell Dow Pharms. Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) ("[T]he expert's bald assurance of validity is not enough."). Because Hamilton's testimony fails to assist the Court in determining whether to certify plaintiffs' proposed classes, it is inadmissible under Rule 702 and *Daubert*.

### D. Hamilton's Opinions And Testimony Are Unreliable

In its motion, KIND established that Hamilton's opinions regarding the potential existence of classwide damages are unreliable for a whole host of reasons, including because Hamilton has not yet built and run his model and fails to explain or substantiate:

- Whether his hypothetical model will actually show that a price premium associated with the challenged statements exists;
- How the data defines "natural," how it classifies and sub-classifies the category, how "natural" is coded into the data, or what other product attributes are captured in the data;
- Which product attributes to include in the proposed regression and how he will decide what product attributes have an impact on the price of the challenged products;
- Whether the data will reflect consumer willingness to pay for whole nuts or the transparent window that KIND has on its products;
- Which benchmark products to include in his regression analysis, although he admits that the inclusion of benchmark products is necessary to a regression analysis in this case;
- Whether his proposed model will calculate a price premium on a product-by-product basis, or across all products;
- How he will determine plaintiffs' and consumers' definitions of "natural" and apply that definition to his model; and
- How he will address the label changes to the challenged products over the class period.

*See* Mot. at 3-8.

Plaintiffs have very little, if any, response to any of these defects. In fact, the opposition admits as much and simply asserts that because Hamilton "now" has "recently acquired" some IRI and Mintel data that he reviewed as part of the Reply Declaration, some of these defects no

7

longer exist. *See* Opp. at 8-9, 15. As for the rest, plaintiffs assert that the Court should apply the lowest possible standards of admissibility and ignore that part for now.

But the Court should not give plaintiffs a "pass." And whether or not the Court rejects the improper Reply Declaration, the fact remains that Hamilton *still* has not constructed his proposed hedonic regression model, disclosed what data will be included, or demonstrated how his model will be relevant and applicable to the case and plaintiffs' theory of liability.[2] *See Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452, at *7 (S.D.N.Y. Aug. 5, 2010) (excluding expert testimony as unreliable because "[his] bare-bones report provides no details concerning the significant conceptual, implementation, or data issues that would be encountered" and "[he] does not demonstrate in adequate detail how his proposed 'approaches' would be used to develop an empirical algorithm to determine, on a class-wide basis, whether there was a price premium as a result of Snapple's 'All Natural' labeling and, if so, how such a premium could be quantified."); *Singleton v. Fifth Generation, Inc.*, 2017 WL 5001444, at *22 (N.D.N.Y. Sept. 27, 2017) (excluding expert witness testimony because the expert's "skeletal analysis falls short.").

For example, contrary to plaintiffs' assurances, it is not possible for Hamilton to design a hedonic regression model to calculate a price premium using only the proposed IRI and Mintel data described by plaintiffs.[3] The IRI data provides pricing information for thousands of UPCs in the snack bar category for the period 2014-2020. In contrast, according to Hamilton, the Mintel data will provide him information regarding *current* attributes of the products in its database that Mintel has been able to collect. The Mintel data is a snap-shot in time and will not tell Hamilton, what, if any, label changes or differences in attributes there were for any of the

---

[2] It is not an oversight that Hamilton has not yet designed his model or disclosed any of its components (what product attributes, what benchmark products, the specific data, etc.). As he and plaintiffs' counsel know, disclosure would subject the model to discovery and analysis by KIND, and a rigorous review by the Court.

[3] Significantly, the actual IRI and/or Mintel data that Hamilton proposes using in the Reply Declaration for his hedonic regression has not been provided to KIND.

(still unidentified) benchmark products. For example, Hamilton can associate changes in the KIND labels (i.e., removal of All Natural and Non GMO) with dates and pricing because he has exemplars of KIND's labels from 2014-2020, but he cannot do the same with any benchmark product. That means that whatever product information is in the Mintel database at the time he accessed the data (e.g., 2020), Hamilton's model will presume those product attributes were in place throughout the 2014-2020 time period and did not change. So, if a benchmark product added "Non GMO" to its label in 2020, Hamilton's model will assume that the product was labeled "Non GMO" throughout the class period and will associate its pricing throughout the class period with "Non GMO." Similarly, a benchmark product could have been labeled "All Natural" from 2014-2019, but removed that attributed in in 2020. Again, based on the limitations of the Mintel data, Hamilton's model would assume that the product was not labeled "All Natural" for the entire class period and will associate its price with the absence of an "All Natural" label statement. Without any data that shows, as with KIND products, what the benchmark product attributes were throughout the class period, Hamilton's proposed model is nothing more than rank speculation. For that reason, it is unreliable and should be excluded. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (expert opinions cannot be "connected to existing data only by the *ipse dixit* of the expert"); *Daubert*, 43 F.3d at 1316 ("[T]he expert's bald assurance of validity is not enough.").

### E. Hamilton Is Not Qualified To Opine On Conjoint Surveys

There is no question that Hamilton is not an expert in survey design and is not qualified to design and/or execute a conjoint survey. *See* Mot. at 10-11; Opp. at 18. In spite of this admitted lack of expertise, plaintiffs contend that because Hamilton is an economist, he is qualified to offer an opinion that there is a methodology called a conjoint survey and that someone (other than him) could design and execute a conjoint survey in order to attempt to calculate class wide-damages. Hamilton's "expertise" on this subject amounts to nothing more than reviewing other class certification motions and seeing that other plaintiffs' lawyers have attempted to use a conjoint survey as the basis for the damages model. But simply repeating that

it may be possible for someone else to design a conjoint survey is not an appropriate topic of expert witness testimony. Given his lack of experience and expertise, Hamilton is not qualified to opine as to either the appropriateness or reliability of a conjoint survey analysis as a method for calculating damages in this action and his opinions in that regard should be stricken.

### III.     CONCLUSION

For the foregoing reasons, and as set out in the moving papers, KIND respectfully requests that the Hamilton Report and Hamilton Supplemental Report should be stricken.

DATED: June 9, 2020

Respectfully Submitted,

By: */s/ Dale J. Giali*
    Dale J. Giali
    Keri E. Borders
    Mayer Brown LLP
    350 South Grand Avenue, 25th Floor
    Los Angeles, CA 90071-1503
    Telephone: (213) 229-9500
    Facsimile: (213) 625-0248
    Email: dgiali@mayerbrown.com

    Counsel for Defendants KIND LLC and KIND Management, Inc.