**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

IN RE: KIND LLC "HEALTHY AND ALL NATURAL" LITIGATION

———————————————————————

THIS DOCUMENT RELATES TO:

ALL ACTIONS

---

: Case No. 1:15-md-02645-NRB
: Case No. 1:15-mc-02645-NRB
:
: Hon. Naomi Reice Buchwald,
: presiding
:
: **REPLY MEMORANDUM IN SUPPORT OF KIND LLC'S MOTION TO EXCLUDE TESTIMONY AND EXPERT REPORT OF J. MICHAEL DENNIS, PH.D.**

**TABLE OF CONTENTS**

                                                                                               **Page**

I. INTRODUCTION ........................................................................................................ 1

II. PLAINTIFFS CANNOT ESTABLISH THE RELEVANCE OR RELIABILITY OF DENNIS' MATERIALITY SURVEY ........................................................................ 1

    A. Plaintiffs Never Explain How Dennis' Referendum Question Tests the Materiality of the "All Natural" Statement ............................................................ 1

    B. Dennis' Failure to Test the Actual Label Statement and Replicate Marketplace Conditions Fatally Undermine His Materiality Claims ................... 3

    C. The Severe Bias and Lack of any Survey Control Warrant Exclusion of the Materiality Survey ........................................................................................... 4

III. PLAINTIFFS CANNOT ESTABLISH THE RELEVANCE OR RELIABILITY OF DENNIS' PERCEPTION SURVEY ........................................................................ 7

    A. Dennis' Survey Is Irrelevant Because It Did Not Ask Consumers What "All Natural" Means ............................................................................................. 7

    B. Dennis' Methodological Errors Make His Perception Survey Unreliable ........... 8

IV. THE COURT SHOULD STRIKE DENNIS' DECLARATION .................................. 10

V. CONCLUSION ........................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
 303 F.3d 256 (2d Cir. 2002) .................................................................................................. 5, 8

*Astiana v. Kashi Co.*,
 291 F.R.D. 493 (S.D. Cal. 2013) ................................................................................................ 7

*Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*,
 923 F. Supp. 2d 1245 (S.D. Cal. 2013) ...................................................................................... 6

*Edmondson v. RCI Hosp. Holdings, Inc.*,
 2020 WL 1503452 (S.D.N.Y. Mar. 30, 2020) ............................................................................ 6

*Gen. Elec. Co. v. Joinder*,
 522 U.S. 136 (1997) .................................................................................................................. 4

*Jones v. ConAgra Foods, Inc.*,
 2014 WL 2702726 (N.D. Cal. June 13, 2014) ........................................................................... 3

*Longoria v. Million Dollar Corp.*,
 2021 WL 791505 (D. Colo. Mar. 2, 2021) ................................................................................. 5

*Malletier v. Donney & Bourke, Inc.*,
 525 F. Supp. 2d 558 (S.D.N.Y. 2007) ........................................................................................ 5

*Price v. L'Oréal USA, Inc.*,
 2021 WL 4459115 (S.D.N.Y. Sep. 29, 2021) ............................................................................ 8

*Procter & Gamble Pharms., Inc. v. Hoffmann-LaRoche, Inc.*,
 2006 WL 2588002 (S.D.N.Y. Sep. 6, 2006) ........................................................................... 5, 8

*Saxon Glass Techs., Inc. v. Apple, Inc.*,
 393 F. Supp. 3d 270 (W.D.N.Y. 2019) ...................................................................................... 5

*In re Scotts EZ Seed Litigation*,
 2017 WL 3396433 (S.D.N.Y. Aug. 8, 2017) .......................................................................... 8, 9

*Townsend v. Monster Beverage Corp.*,
 303 F. Supp. 3d 1010 (C.D. Cal. 2018) .................................................................................. 2, 3

*Water Pik, Inc. v. Med-Systems, Inc.*,
 726 F.3d 1136 (10th Cir. 2013) ................................................................................................. 6

**Other Authorities**

58 Fed. Reg. 4601-01 at 4603 (Jan. 11, 1993) ............................................................................... 2

Shari Diamond, *Reference Guide on Survey Research,* Reference Manual on Sci.
   Evid. 229 (Fed. Jud. Ctr., 2d ed. 2000), *available at*
   https://www.scholars.northwestern.edu/en/publications/reference-guide-on-
   survey-research ........................................................................................................................ 5

Shari Diamond, *Reference Guide on Survey Research,* Reference Manual on Sci.
   Evid. 359 (Fed. Jud. Ctr., 3d ed. 2011), *available at*
   https://nap.nationalacademies.org/read/13163/chapter/9 ............................................. 5, 6, 8, 9

Fed. R. Evid. 403 ........................................................................................................................... 5

Fed. R. Evid. 702 ........................................................................................................................... 5

**TABLE OF REFERENCES**

| Abbreviation | Document | Role in Case |
|---|---|---|
| Dennis Rpt. | Expert Report of Dr. J. Michael Dennis, Ex. 5 to the KB Decl. | Plaintiffs' Survey Expert |
| Dennis Decl. | Declaration of J. Michael Dennis in Opposition to KIND LLC's Motions to Exclude Testimony and Report of Dr. J. Michael Dennis, Ph.D., for Summary Judgment, or in the Alternative, Partial Summary Judgment, and to Decertify the Classes Summary Judgment, or in the Alternative, Partial Summary Judgment, and to Decertify the Classes | Plaintiffs' Survey Expert |
| Dennis Tr. | Deposition Transcript of Dr. J. Michael Dennis, Ex. 9 to the KB Decl. | Plaintiffs' Survey Expert |
| Kivetz Dennis Reb. Rep. | Expert Declaration of Dr. Ran Kivetz in Response to Dennis Expert Report; Ex. 11 to the KB Decl. | Defendant's Survey, Statistics, Marketing, and Consumer Purchasing Behavior Expert |
| Toutov Rpt. | Expert Report of Dr. Anton Toutov, Ex. 7 to the KB Decl. | Plaintiffs' Expert on "Naturalness" |
| Mtn. Excl. Dennis | KIND LLC's Memorandum of Law in Support of Motion to Exclude the Testimony and Expert Report of Dr. J. Michael Dennis, Ph.D. | N/A |
| Dennis Opp. | Plaintiffs' Memorandum of Law in Plaintiffs Opposition to Defendant's Motion to Exclude the Testimony and Expert Report of Dr. J. Michael Dennis, Ph.D. | N/A |

I.      **INTRODUCTION**

The upshot of the surveys conducted by Dr. J. Michael Dennis is that (a) given the choice between two otherwise-identical products, most respondents would purchase the product labeled as "All Natural"; and (b) when asked whether they "expect" that a product labeled as "All Natural" would contain "artificial or synthetic ingredients" or certain chemicals, including "ascorbic acid," most respondents said no. As plaintiffs concede, Dennis did not attempt to glean from his surveys *any* definition of "natural" or "all natural"—much less one that reasonable consumers understand. Plaintiffs nonetheless argue that Dennis' opinion has some bearing on the materiality of the "All Natural" statement and reasonable consumers' understanding of that term.

Dennis' "materiality" survey says nothing about whether consumers considered the "All Natural" label statement *on KIND products* to be important to their purchasing decision. And his "perception" survey fails to consider the many possible meanings of "all natural," much less provides any insight on what plaintiffs contend "all natural" means or how consumers are allegedly deceived by KIND's "all natural" labeling. Dennis' findings therefore are irrelevant.

Dennis' surveys are also unreliable. Dennis' surveys did not test the actual KIND label at issue here, they used an "All Natural" statement when the actual label statement on KIND products was "All Natural / Non GMO", they lacked any control whatsoever, and they used leading and prejudicial language to skew results in plaintiffs' favor.

In short, because Dennis' survey results are irrelevant and unreliable, notwithstanding plaintiffs' arguments to the contrary, the Court should exclude Dennis' report and testimony.

II.     **PLAINTIFFS CANNOT ESTABLISH THE RELEVANCE OR RELIABILITY OF DENNIS' MATERIALITY SURVEY**

   A.   **Plaintiffs Never Explain How Dennis' Referendum Question Tests the Materiality of the "All Natural" Statement**

Dennis' "materiality" survey asked respondents to choose which of two products they would purchase: a product that includes an "All Natural" statement, or one that does not. Dennis Rpt. ¶¶ 38-51, 59-61, 63. The two products were otherwise identical. *Id.* ¶ 63. His survey thus

1

measured whether, all else being equal, survey participants would prefer a product that makes an "All Natural" statement, or one that does not.[1] However, as KIND explained in its motion, this is not the relevant question or test for materiality. *See* Mtn. Excl. Dennis at 4-5. Rather, materiality is concerned with whether the relevant statement was actually "a factor in consumers' purchasing decision." *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1045 (C.D. Cal. 2018).

By way of analogy, assume a consumer is buying a vacuum cleaner. In deciding which to purchase, many factors might be material to his or her purchasing decision: brand, size, type (upright vs. canister, dry vs. wet), power source (cordless or not), warranty, particular accessories, and so forth. What likely is *not* a factor, however, is the vacuum cleaner's color. If asked to choose between two vacuums that are identical except one is blue and the other is green, it is possible that most consumers would choose the blue one. But that would not mean that color is a material factor when a consumer purchases a vacuum. So, too, here: Dennis' survey question says nothing about how consumers value the "All Natural" statement "compared to other attributes of the product[s] and the [relevant] market generally." *Id.* (quotation marks and citation omitted).

Tellingly, plaintiffs' opposition to KIND's motion ***never responds to this fundamental deficiency***. Plaintiffs do not, and cannot, explain how Dennis' survey demonstrates that the "All Natural" label statement was a material purchasing factor for reasonable consumers. Plaintiffs fail once more to identify any scientific or scholarly authority suggesting that Dennis' "referendum" question is standard or could be used to measure materiality. Though plaintiffs again point to the Report on the NOAA Panel on Contingent Valuation (Dennis Opp. at 10), they do not address KIND's observation that that Report does not recommend the type of question that Dennis uses.[2]

Instead, plaintiffs try, but fail, to distinguish the cases that KIND cites for this simple

---

[1] Dennis' "materiality" survey asked leading questions and emphasized the presence of the "All Natural" statement, leading to severe biases in the results. Kivetz Dennis Reb. Rpt. ¶¶ 13-25.

[2] *Nothing* in that Report even remotely justifies Dennis' "referendum" question. The Report only uses the term "referendum" to describe a type of question that can be asked in contingent valuation surveys that measure willingness to pay—which Dennis concedes he is not measuring here. Mtn. Excl. Dennis at 6-7; *see also* 58 Fed. Reg. 4601-01 at 4603 (Jan. 11, 1993).

proposition. For instance, plaintiffs contend *Townsend* is distinguishable because the survey in that case "did not 'provide insight into consumers' purchasing decisions.'" Dennis Opp. at 11. But Dennis' survey—just like the survey in *Townsend*—does not address "whether the challenged statements were in fact material to [consumers'] purchases." 303 F. Supp. 3d at 1045 (quotation marks and citation omitted). Plaintiffs similarly attempt to distinguish *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726 (N.D. Cal. June 13, 2014) because the expert in *Jones* did not conduct any survey at all. But as *Jones* explained, the expert would have needed to survey "customers to assess whether the challenged statements were in fact material to their purchases, as opposed to, or in addition to, price, promotions, retail positioning, taste, texture, or brand recognition." *Id.* at *15. Dennis has not done that here. Accordingly, his "materiality" survey does not actually address materiality and is irrelevant.

### B. Dennis' Failure to Test the Actual Label Statement and Replicate Marketplace Conditions Fatally Undermine His Materiality Claims

Dennis' presentation of labels in his referendum survey omitted many other product features relevant to consumers' decisions in the market—such as brand name, logo, packaging, product appearance, nutrition facts, ingredients, and other label statements. Mtn. Excl. Dennis at 5. Plaintiffs never explain why Dennis omitted most of this information when he presented the product in his survey. Their only response is that Dennis did not want consumers to recognize the products' brand because he wanted "to eliminate any pre-existing beliefs and brand loyalties with respect to the KIND Products that survey respondents might have had." Dennis Opp. at 8-9. But this is exactly KIND's point: when consumers shop for snack bars in the marketplace, their pre-existing beliefs and brand loyalties influence their product purchases. The materiality of the "All Natural" statement to real-world consumers cannot be measured without considering products' brand names and other marketplace factors. *See generally* Kivetz Dennis Reb. Rep. ¶¶ 62-66.

Likewise, the "All Natural" statement never appeared alone on KIND labels; rather, it only appeared as part of the broader statement "All Natural / Non GMO." Mtn. Excl. Dennis at 6; Kivetz Dennis Reb. Rep. ¶ 67. Yet Dennis' presentation of the product label in his referendum

survey only included the standalone phrase "All Natural." *Id.* ¶ 68. Plaintiffs argue this omission is harmless because the "non-GMO" claim "reinforce[s] consumers' perceptions of the 'natural-ness' message being conveyed by the 'All Natural' claim," and thus its omission led to "more conservative" results for plaintiffs. Dennis Opp. at 8. But plaintiffs have no scientific basis for that argument. Dennis never tested whether consumers understand "All Natural" to mean "Non-GMO," and he never tested consumers' understanding of the statement "All Natural / Non GMO." Plaintiffs instead cite Dennis' baseless assertion in his new, inappropriate declaration that "[i]n [his] expert judgment, including the 'non-GMO' descriptor would have resulted in producing survey results that are more pro-plaintiff friendly, not less so." *Id.* (citing Dennis Decl. ¶ 34). Yet as plaintiffs acknowledge elsewhere in their brief, "the testimony of [an] expert in the absence of any survey" cannot measure materiality. *Id.* (citing *Jones*, 2014 WL 270276, at *15); *see also, e.g.*, *Gen. Elec. Co. v. Joinder*, 522 U.S. 136, 146 (1997) (district courts need not "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").

Regardless, plaintiffs' and Dennis' argument explicitly acknowledges that the "Non-GMO" qualifier on an "All Natural" label statement ***alters consumers' understanding of what that statement means—toward a "non-GMO" definition of "natural."*** If real-world consumers thought "natural" meant "non-GMO," then plaintiffs would need to prove that the "non-GMO" statement was false. Yet plaintiffs have abandoned that theory of deception.

Accordingly, Dennis' "materiality" survey is also irrelevant and inadmissible because Dennis only assessed the "All Natural" statement without marketplace context and without the full label statement as customers would have seen and understood it.

### C. The Severe Bias and Lack of any Survey Control Warrant Exclusion of the Materiality Survey

In response to KIND's arguments that Dennis' survey lacked appropriate controls and introduced various biases to the survey results, plaintiffs argue that these issues affect the weight of Dennis' survey, not its admissibility. Dennis Opp. at 12, 13. But plaintiffs cannot refute that courts exclude expert surveys outright when they suffer from these sorts of methodological

4

deficiencies. *See, e.g.*, *Malletier v. Donney & Bourke, Inc.*, 525 F. Supp. 2d 558, 581 (S.D.N.Y. 2007) ("The bottom line is that if the survey suffers from substantial methodological flaws, it will be excluded under both Rule 403 and Rule 702."); *Saxon Glass Techs., Inc. v. Apple, Inc.*, 393 F. Supp. 3d 270, 285-86 (W.D.N.Y. 2019) (same). Indeed, "when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 *mandate* the exclusion of that unreliable opinion testimony." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) (emphasis added).

Plaintiffs attempt to distinguish such cases by arguing that Dennis *did* use a control by providing "Don't know/not sure" as a possible answer to the question. Dennis Opp. at 13, 14. But that is *not* at all a control; a control comes in the form of either a control *question* or control *group*. Kivetz Dennis Reb. Rep. ¶ 72. A control question is a separate question—similar in format to the surveyor's actual "test" question—that provides a "baseline" permitting the surveyor to conclude that the survey responses are actually the result of the variable being tested (here, the "All Natural" statement) and not the result of preexisting beliefs or other "noise." *Id.* ¶¶ 72-76, 79-80; *see also* Shari Diamond, *Reference Guide on Survey Research,* Reference Manual on Sci. Evid., 359, 401 (Fed. Jud. Ctr., 3d ed. 2011); *Longoria v. Million Dollar Corp.*, 2021 WL 791505, at *8 (D. Colo. Mar. 2, 2021).[3] A control group is a separate group of respondents that is shown a different stimulus—again allowing the surveyor to compare survey responses against a baseline. Kivetz Dennis Reb. Rep. ¶¶ 72, 76; *see also* Dennis Tr. 37:7-38:9 (explaining that survey control typically involves use of "two different groups, the test group or a control group"). For example, Dennis could have exposed a control group to an image of the hypothetical product without the

---

[3] Plaintiffs cite *Procter & Gamble Pharms., Inc. v. Hoffmann-LaRoche, Inc.*, 2006 WL 2588002, at *23 (S.D.N.Y. Sep. 6, 2006), which in turn cites Diamond's *Reference Guide on Survey Research* for the proposition that "Control questions offer a 'don't know' or 'no opinion' type of option, as part of a set of response alternatives to a closed-ended question." The *Procter & Gamble* court erred in that citation and conclusion. The cited passage of Diamond's treatise actually refers to this type of question as a "quasi-filter question" that is used to "screen out respondents." *See* Shari Diamond, *Reference Guide,* Reference Manual on Sci. Evid. 229, 275 (Fed. Jud. Ctr., 2d ed. 2000), *available at* https://www.scholars.northwestern.edu/en/publications/reference-guide-on-survey-research.

5

"All Natural" claim or with an alternative statement, such as "All Simple" or "All Great." Kivetz Dennis Decl. ¶ 77. But Dennis did not do that. Instead, he allowed *all* of his "materiality" survey participants to see *both* hypothetical products (exactly the same, but one with the "All Natural" statement and one without) and he asked them all the *same* questions about which they would prefer. *Id.* This failure is particularly egregious given the closed-ended, binary nature of Dennis' question. As Professor Diamond's *Reference Guide on Survey Research* explains, "[o]nly when control groups or control questions are added . . . can this question format provide reasonable response estimates." *Reference Guide* (3d ed.) at 394. Dennis' failure to include any survey control warrants exclusion. *See Edmondson v. RCI Hosp. Holdings, Inc.*, 2020 WL 1503452, at *7 (S.D.N.Y. Mar. 30, 2020) (excluding survey that "fail[ed] to use a control group").

Likewise, plaintiffs argue that Dennis properly eliminated biases in his survey result by presenting a purportedly unbiased product to survey respondents. Dennis Opp. at 12-13. However, as already noted, that survey feature actually *removed* necessary marketplace context (and distorted the disputed KIND package) that would have shed light onto survey respondents' decision-making, while at the same time failing to correct the Dennis' survey's actual biases. Plaintiffs never rebut KIND's observation that Dennis' survey repeatedly directed survey respondents to the "All Natural" statement, first by presenting two products whose only different feature was the "All Natural" statement, and then by explicitly pointing out this difference to survey respondents. Dennis thus "improperly suggested" the "'correct' answer" to survey respondents—a problem that "was exacerbated because [Dennis] did not use a control to test the accuracy of his survey." *Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, 923 F. Supp. 2d 1245, 1257-58 (S.D. Cal. 2013); *see also Edmondson*, 2020 WL 1503452 at *7 (excluding survey where expert's survey "expressly stat[ed] that the second image is identical absent the presence of the Plaintiff," and thereby "alerted respondents that the identity of the Plaintiff was the variable being measured"); *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1148 (10th Cir. 2013) (expert survey properly excluded where "the question suggested the very answer most helpful to

6

Med-Systems' cause rather than eliciting responses as they might occur spontaneously in the marketplace"). The Court thus should exclude Dennis' materiality survey.

### III. PLAINTIFFS CANNOT ESTABLISH THE RELEVANCE OR RELIABILITY OF DENNIS' PERCEPTION SURVEY

#### A. Dennis' Survey Is Irrelevant Because It Did Not Ask Consumers What "All Natural" Means

Dennis' "perception" survey asked respondents whether, based on the "All Natural" statement, they expected that the product (a) would or would not "contain artificial and synthetic ingredients," and (b) would or would not be "made using these chemicals: Phosphoric Acid, Hexane, Potassium Hydroxide, Ascorbic Acid." Dennis Rpt. ¶¶ 48-50. Amazingly, plaintiffs concede that "*Dennis' survey was not intended to reveal consumers' definition of 'All Natural*,'" just like "Dr. Toutov's report and analysis was not intended to conform or support any purported definition of 'natural' or "All Natural.'" Dennis Opp. at 19 (emphasis added). Rather, they say, the survey was only intended to determine "whether or not consumers understood the phrase 'All Natural' to mean that the Products would or would not contain" those particular ingredients. *Id.* at 18.

Preliminarily, Dennis' question did *not* ask plaintiffs what they understood the "All Natural" statement "to mean" or how they would define "natural." It only asked them what their "*expectation*" of a product would be based on the characteristic provided. As KIND explained (Mtn. Excl. Dennis at 12), these two concepts are different. Plaintiffs never address this foundational error.

Regardless, plaintiffs' claims are based on the premise that KIND's "All Natural" label statement was false to reasonable consumers. Thus, Dennis' survey cannot possibly be relevant when, as plaintiffs concede, it did not even *try* to ascertain a definition of the term "All Natural" that reasonable consumers can agree upon—and that can be used to assess the falsity of the "All Natural" statement on the particular KIND products at issue in this case. *See, e.g.*, *Astiana v. Kashi Co.*, 291 F.R.D. 493, 508 (S.D. Cal. 2013) ("Plaintiffs fail to sufficiently show that 'All

7

Natural' has any kind of uniform definition among class members" and "that Defendant's representation of 'All Natural' in light of the presence of the challenged ingredients would be considered to be a material falsehood by class members.").

This deficiency in Dennis' perception survey is particularly egregious when paired with his "materiality" survey, which does not actually measure whether "All Natural" is actually material to consumers. Because Dennis did not ascertain a common understanding of "natural," his questioning about the "All Natural" term, standing alone, provides no insight on whether it is the absence of artificial ingredients, synthetic ingredients, phosphoric acid, hexane, potassium hydroxide, ascorbic acid, or some other ingredient or component that allegedly made some difference in consumers' purchasing decisions. *Cf. Price v. L'Oréal USA, Inc.*, 2021 WL 4459115, at *4 (S.D.N.Y. Sep. 29, 2021) (rejecting survey and decertifying class where survey did not parse the relative impact of each term within the label statement "Keratindose Pro-Keratin + Silk"). Therefore, Dennis' perception survey is irrelevant.

### B.   Dennis' Methodological Errors Make His Perception Survey Unreliable

Plaintiffs also argue that the methodological errors in Dennis' perception survey go to weight of Dennis' opinion, not its admissibility. However, as noted, the Court must exclude an expert opinion that is based on a method or study that is "inadequate to support the conclusions reached." *Amorgianos*, 303 F.3d at 266. Plaintiffs' attempt to justify Dennis' errors are in vain.

First, plaintiffs argue again that Dennis' inclusion of a "Not sure/No expectation" response in his perception survey is a sufficient "control." Dennis Opp. at 15. But this is wrong for the same reasons noted above: such a response is not a *separate* control question or *separate* control group that actually constitutes a survey control. *See supra* § II.C; Kivetz Dennis Reb. Rep. ¶¶ 72, 76, 80; Diamond, *Reference Guide* (3d ed.), at 401; Dennis Tr. 37:7-38:9.[4] And the absence of a control given Dennis' binary question precludes its accuracy. Diamond, *Reference Guide*, at 394.

---

[4] Plaintiffs cite *In re Scotts EZ Seed Litigation*, 2017 WL 3396433 (S.D.N.Y. Aug. 8, 2017) as an instance in which a court accepted a similar perception survey prepared by Dennis. However, the *In re Scotts* court—relying on the defendants' brief in that action, which in turn cited *Procter & Gamble*—made the same error as the *Procter & Gamble* court (*see supra* n. 3) in concluding that

8

Second, plaintiffs argue that Dennis' questions did not direct survey respondents to any particular definition of the term "natural" because the survey only tested whether consumers did or did not understand that "all natural" products contain certain ingredients. Dennis Opp. at 16. But this argument fails for the reasons above: the question did not isolate which (of the various ingredients Dennis' question listed) supposedly were pertinent to consumers' purchasing decisions. *See supra* § III.A. Plaintiffs also do not address Dennis' failure to use open-ended questions or another mechanism to isolate a population of respondents who actually noticed and considered the "All Natural" statement on the product label. Mtn. Excl. Dennis at 10. Though plaintiffs selectively cite Diamond's *Reference Guide*, that treatise actually explains that close-ended questions "direct the respondent away from or toward . . . particular response[s]." Diamond, *Reference Guide* (3d ed.) at 392. Thus, Diamond explains, responses to close-ended questions "will be meaningful only if . . . the choices cover all possible answers a respondent might give to the question"—which, as explained, is not the case here. *Id.* at 393. And, as noted, this problem is exacerbated where (as here) there is no control question or group—without which a survey cannot provide "reasonable response estimates." *Id.* at 394.

Consistent with these deficiencies, Dennis' new (and improper) declaration frankly admits that he used closed-ended questions because respondents otherwise "***might be unmotivated or unable to articulate what they understand the 'All Natural' claim to mean to them***." Dennis Decl. ¶ 27 (emphasis added). This concedes KIND's point. By using closed-ended questions—without *any* preceding filter questions, which is required (Kivetz Dennis Reb. Rpt. § D.2)—Dennis converted respondents who did not know or care what "All Natural" means into ones whose survey responses conveniently fit plaintiffs' theory. Indeed, Dennis' statement amounts to a concession that many survey respondents did not have any understanding of the term "All Natural" or consider it material.

---

a "don't know" or "no opinion"-type response is a "control." *See In re Scotts*, 2017 WL 3396433, at *9; *In re Scotts*, No. 7:12-cv-04727-VB-PED, ECF No. 245, at 17 (citing *Procter & Gamble*).

Third, plaintiffs contend that their use of the term "ascorbic acid" instead of vitamin C was appropriate because, they claim, their chemistry expert Dr. Toutov stated that "ascorbic acid is the synthetic form of vitamin C." Dennis Opp. at 17 (emphasis added). Not so. Toutov never disputes that ascorbic acid and vitamin C are the same thing—and that "ascorbic acid is indeed found in nature." Toutov Rpt. ¶ 115. Regardless, survey respondents are not chemists. Using a chemical name instead of a commonly understood reference to vitamin C was intended to improperly influence and lead survey respondents.

Finally, in response to the criticism that the survey failed to define "artificial or synthetic" or "made with," plaintiffs say "it can be assumed" that survey respondents understood these words according to their "plain English." Dennis Opp. at 17. This response simply ignores the numerous definitions and concepts that apply to each of these words. For instance, does "made with" mean the product *contains* certain chemicals or only that they were used somewhere in the manufacturing process? Dennis' question never clarified—and now plaintiffs don't either.

## IV. THE COURT SHOULD STRIKE DENNIS' DECLARATION

The Court should strike Dennis' improper declaration, filed concurrently with plaintiffs' opposition (ECF No. 279). Plaintiffs previously tried to submit "reply" expert reports that the Court struck as improper under the federal rules and the scheduling order governing this case. Despite the Court's clear instruction, plaintiffs *again* attempt to sneak in their unauthorized "reply" expert opinion through Dennis' "declaration" submitted in connection with plaintiffs' oppositions. The declaration is improper and should be stricken.

## V. CONCLUSION

For these reasons and those described in its opening memorandum, the Court should grant KIND's motion and exclude Dr. Dennis' testimony and expert report in their entirety, and should strike Dennis' declaration.

10

DATED: April 1, 2022                Respectfully Submitted,

By: */s/ Keri E. Borders*
    Dale J. Giali
    Keri E. Borders
    Mayer Brown LLP
    350 South Grand Avenue, 25th Floor
    Los Angeles, CA 90071-1503
    Telephone: (213) 229-9500
    Facsimile: (213) 625-0248
    Email: kborders@mayerbrown.com

Counsel for Defendant KIND LLC